# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FANNIE MAE,<br>3900 Wisconsin Avenue, N.W.<br>Washington, DC 20016<br><br>    Plaintiff,<br><br>  v.<br><br>KPMG LLP,<br>2001 M Street, N.W.<br>Washington, DC 20036<br><br>    Defendant. | NO. 1:06CV02111 (RJL) |

## PLAINTIFF FANNIE MAE'S MOTION TO REMAND

For the reasons set forth in the attached Memorandum, Plaintiff Fannie Mae hereby moves the Court to remand this action to the Superior Court of the District of Columbia, Civil Division. Pursuant to Local Rule 7(m), counsel for Fannie Mae and counsel for Defendant KPMG have conferred, and counsel for KPMG opposes this motion.

Dated: January 11, 2007

                                                    /s/

Jerome L. Epstein (DC Bar # 412824)
Ian Heath Gershengorn (DC Bar # 448475)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Telephone: 202-639-6062
Facsimile: 202-639-6066

Ronald L. Marmer
C. John Koch
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
*Counsel for Fannie Mae*

**DISCLOSURES OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS**

No. 1:06CV02111 (RJL), Fannie Mae v. KPMG LLP

Certificate required by LCvR 7.1 of the Local Rules of the United States District Court for the District of Columbia:

I, the undersigned, counsel of record for Plaintiff Fannie Mae, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of Fannie Mae which have any outstanding securities in the hands of the public:

There are no parent companies, subsidiaries or affiliates of Fannie Mae which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need for recusal.

/s/   Jerome L. Epstein
Attorney of Record for Plaintiff Fannie Mae


Pursuant to Fed. R. Civ. P. 7.1, I, the undersigned, counsel of record for Plaintiff Fannie Mae, certify that to the best of my knowledge and belief, no publicly owned company currently holds a combined share in excess of ten percent of Fannie Mae's outstanding stock.

/s/   Jerome L. Epstein
Attorney of Record for Plaintiff Fannie Mae

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
FANNIE MAE,                                )
3900 Wisconsin Avenue, N.W.                )
Washington, DC  20016                      )
                                           )
*Plaintiff,*                               )
                                           )
v.                                         )   NO. 1:06-CV02111 (RJL)
                                           )
KPMG LLP,                                  )
2001 M Street, N.W.                        )
Washington, DC  20036                      )
                                           )
*Defendant.*                               )
_____)

**PLAINTIFF FANNIE MAE'S MEMORANDUM IN SUPPORT OF
MOTION TO REMAND TO THE
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

On December 12, 2006, Plaintiff Fannie Mae filed suit in D.C. Superior Court against its former auditor KPMG LLP.  Fannie Mae alleged exclusively state law claims – accounting malpractice/negligence and breach of contract – in connection with the massive accounting restatement that Fannie Mae has recently undertaken.  Year after year, KPMG approved Fannie Mae's accounting policies and practices, including providing advance approval of Fannie Mae's hedge accounting policies.  But Fannie Mae later learned that more than 30 accounting policies and practices KPMG approved were inconsistent with GAAP and had to be restated, forcing Fannie Mae to expend well over $1 billion to correct the historical financial statements.

The day that Fannie Mae filed its malpractice action, KPMG removed the action to federal court.  KPMG has not asserted diversity jurisdiction, and Fannie Mae has not alleged any federal causes of action.  Thus, although KPMG's removal notice also invokes 28 U.S.C. § 1331, KPMG removed based principally on Fannie Mae's Charter Act, 12 U.S.C. § 1723a(a), which

1

grants Fannie Mae the power to sue or be sued in state court or in federal court. Under KPMG's theory, the Charter Act uniquely disadvantages Fannie Mae, allowing KPMG to remove and depriving Fannie Mae of the power that virtually every other corporation in America has, namely, to pursue state law claims in state court. KPMG thus turns the Charter Act and its jurisdictional provision on their head, converting an act designed to protect Fannie Mae in its pursuit of its congressionally mandated mission of ensuring affordable housing into a unique burden that advances the interests of KPMG at the expense of the entity the Act is designed to protect. Fannie Mae now respectfully moves this Court to remand the action to D.C. Superior Court.[1]

## INTRODUCTION

Fannie Mae and KPMG start from common ground. Fannie Mae's Charter Act, 12 U.S.C. § 1723a(a), creates federal jurisdiction when Fannie Mae sues in or seeks to remove to federal court. The Charter Act thus guarantees Fannie Mae access to a federal forum whenever Fannie Mae concludes that its federally-mandated national housing mission or other corporate interests are implicated.

The common ground ends there. According to KPMG, the Charter Act allows for removal to federal court of a suit Fannie Mae files in state court raising only state law claims. And that is so, KPMG contends, even if Fannie Mae objects to removal, and even if Fannie Mae concludes that no aspect of its federally-mandated mission would be harmed – indeed, even if

---

[1] Fannie Mae filed its malpractice suit in Superior Court because its claims do not arise out of the same transactions as, and are entirely distinct from, the plaintiffs' claims in the securities class action. That case involves federal law claims of fraud, arising out of the sale of securities. Fannie Mae's malpractice action does not arise under federal law, does not involve the sale of securities, and does not allege fraud. In addition, the bulk of Fannie Mae's damages caused by KPMG's malpractice and breach of contract are out-of-pocket expenses to prepare the restatement and subsequent financial reports – damages unrelated to the plaintiffs' claims in the securities action.

2

Fannie determines that its federal mission would be advanced – by litigating the state law claim in state court. KPMG thus seeks to convert Fannie Mae's shield into a sword: provisions designed to provide Fannie Mae access to its chosen forum now operate, in KPMG's view, to deprive Fannie Mae of that chosen forum when the forum is state court. And KPMG makes this argument even though the plain text of the Charter Act gives Fannie Mae expressly the *power* to "sue" and "complain" in state court.

Fannie Mae is unaware of *any* case that has ever allowed removal in a context such as this, which would be contrary to the text and purpose of the Charter Act. Indeed, KPMG's theory would allow any defendant to convert a hundred-dollar state foreclosure suit filed by Fannie Mae into a federal case, unnecessarily burdening the federal courts. The Charter Act simply does not permit removal of an otherwise unremovable case over Fannie Mae's objection. This state law negligence action involving non-diverse parties should thus be remanded for suit in D.C. Superior Court.

## DISCUSSION

Congress chartered Fannie Mae to help advance the "national goal . . . of 'a decent home and a suitable living environment for every American family.'" Pub. L. No. 90-448, § 2, 82 Stat. 476, *reprinted in* 1968 U.S.C.C.A.N. 547, 547. As Congress envisioned, Fannie Mae acts in the secondary mortgage market, buying mortgages that others originate rather than lending directly to homebuyers. Fannie Mae's willingness to purchase loans – especially loans to low-, moderate-, and middle-income homebuyers – relieves lenders from the risks associated with holding mortgages on their own books and frees up capital for lenders to issue additional mortgages to homebuyers, improving distribution of investment capital available for mortgage financing. *See* 12 U.S.C. § 1716(1), (4); *see generally Rust v. Johnson*, 597 F.2d 174, 177 (9th Cir. 1979) ("FNMA owes its existence to Congressional recognition of the importance of

3

secondary credit in bringing about the National goal of a decent home and a suitable living environment for every American family.") (internal quotation marks omitted). The extensive web of federal involvement in Fannie Mae's operations underscores the importance that Congress attributed to Fannie Mae's mission.[2]

Among the benefits that Congress bestowed to advance Fannie Mae's mission was the "power" – not the obligation – to file suits in, or remove suits to, federal courts. Thus, Congress enacted a "sue and be sued" clause, 12 U.S.C. § 1723a(a), using the very language that the Supreme Court later held in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), signals congressional intent to create federal jurisdiction.

In *Red Cross*, plaintiffs had sued the Red Cross in state court raising only state law claims. The Red Cross removed, premising federal jurisdiction on the provision in the Red Cross charter that authorized the Red Cross to "'sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.'" 505 U.S. at 248 (quoting charter). The Supreme Court began by canvassing a line of cases, dating back to 1809, in which it had considered the jurisdictional effect of various statutory "sue and be sued" provisions. *See Red Cross*, 505 U.S. at 252-55. These cases, the Court concluded, established the following "rule": "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *Id.* at 255. Applying this rule, the Court then held that the Red Cross charter conferred federal court jurisdiction because

---

[2] *See, e.g.*, 12 U.S.C. § 1723a(k) (financial reporting requirements); *id.* § 1723a(m) (mortgage data reporting requirements); *id.* § 1723(n) (reports to Congress); *id.* § 4612 (minimum capital requirements); *id.* §§ 4513-4518 (regulatory authority of OFHEO director); *id.* §§ 4562-4564 (HUD authority over housing goals); *id.* §§ 4632 & 4636 (enforcement authority of OFHEO Director); *id.* §§ 4581 & 4585 (enforcement authority of Secretary); *id.* § 1723a(j) (audit authority of Comptroller General); *id.* § 1719(b), (d) (requirement of Secretary of Treasury's approval for debt issuances).

4

the charter "expressly authorize[ed] the organization to sue and be sued in federal courts." *Id.* at 257.

Under *Red Cross* and the 200 years of precedent it synthesized, this Court plainly would have had subject matter jurisdiction if Fannie Mae had sued KPMG in federal court. Fannie Mae's Charter Act grants it authority "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a). Like the charter provision at issue in *Red Cross*, the "sue and be sued" provision in Fannie Mae's Charter Act "specifically mentions the federal courts." *Red Cross*, 505 U.S. at 255. Under *Red Cross*, that is sufficient to demonstrate Congress's intent to confer original federal court jurisdiction over cases in which Fannie Mae is a party. *See id.* It is thus no surprise that the federal courts routinely rely on *Red Cross* and the Charter Act to hold that they have original jurisdiction over suits brought or removed *by Fannie Mae*. *E.g.*, *Grun v. Countrywide Home Loans, Inc.*, No. Civ. A. SA03-CA-0141YR, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004); *Connelly v. Fed. Nat'l Mortgage Ass'n*, 251 F. Supp. 2d 1071, 1072-73 (D. Conn. 2003); *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 891 F. Supp. 371, 372 (S.D. Tex. 1994), *aff'd*, 61 F.3d 288 (5th Cir. 1995); *Peoples Mortgage Co. v. Fed. Nat'l Mortgage Ass'n*, 856 F. Supp. 910, 917 (E.D. Pa. 1994).[3]

---

[3] One exception is *Federal National Mortgage Ass'n (Fannie Mae) v. Sealed*, 457 F. Supp. 2d 41 (D.D.C. 2006), which relied on the presence of the phrase "of competent jurisdiction" in Fannie Mae's Charter to distinguish *Red Cross*. The Supreme Court in *Red Cross*, however, articulated a categorical rule: "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." 505 U.S. at 255. The reading of *Red Cross* to invite additional case-by-case parsing of statutory language is thus directly contrary both to *Red Cross* and to the Supreme Court's frequent admonition in the area of jurisdictional provisions that "[w]hat is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." *Finley v. United States*, 490 U.S. 545, 556 (1989).

The decision also relies on a misreading of *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003). *See* 457 F. Supp. 2d at 45 n.3. The Supreme Court in *Breuer* found that a statutory provision containing the term "of competent jurisdiction" *did* establish jurisdiction.

5

KPMG does not dispute any of this. By removing, however, it suggests that what is sauce for the goose is sauce for the gander: if Fannie Mae can remove to federal court when it *is sued* in state court, then any defendant can remove when Fannie Mae *sues* in state court. But the goose and the gander are not similarly situated here. The purpose of the Charter Act is to advance Fannie Mae's congressionally-chartered mission. Congress thus bestowed on Fannie Mae a host of benefits to protect this national mission, including an exemption from most state and local taxation, *see* 12 U.S.C. § 1723a(c)(2); authorization to do business "without regard to any qualification or similar statute in any State of the United States," 12 U.S.C. § 1723a(a); and even "backstop authority" for the Treasury to buy and sell up to $2.25 billion of Fannie Mae obligations. 12 U.S.C. § 1719(c); *Fed. Nat'l Mortgage Ass'n v. Lefkowitz*, 390 F. Supp. 1364, 1368 (S.D.N.Y.) (three-judge panel); H.R. Rep. No. 90-1585 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2873, 2945 ("The existence of this backstop authority . . . would tend to enhance the corporation's credit standing and would constitute Government recognition of the significance of the corporation's operations to the national interest aspects of the mortgage financing industry."). Giving Fannie Mae the power to remove cases to federal court is of a piece: Congress ensured that Fannie Mae would have access to a federal forum when its federal mission would be threatened. However, allowing removal under the Charter Act when Fannie

---

The Court stated clearly that because a suit under the FLSA "may be maintained . . . in any Federal or State court of competent jurisdiction," "[t]here is no question that [the plaintiff] could have begun his action in the District Court." 538 U.S. at 694 (quotation marks omitted). Moreover, even if the district court's reading of *Breuer* were correct, the FLSA – the statute at issue there – provides a weak analogy at best for the Fannie Mae Charter Act. Indeed, when construing a statute much more analogous to the Charter Act, the D.C. Circuit suggested (though without deciding definitively) that a statute with the phrase "of competent jurisdiction" would create subject matter jurisdiction. *See Kline v. Cisneros*, 76 F.3d 1236, 1240 (D.C. Cir. 1996) (noting that plaintiff "might have been able to establish the district court's jurisdiction . . . [under] 12 U.S.C. § 1702, [which] provides that the secretary of HUD shall be authorized, in his official capacity, 'to sue and be sued in any court of competent jurisdiction, State or Federal' when carrying out provisions of the Act").

6

Mae determines that it has purely state-law claims that can be resolved in state court without any adverse impact on its mission advances no discernable federal interest.

Further, KPMG's unprecedented application of the Charter Act against Fannie Mae would pervert statutory text by depriving Fannie Mae of one of the rights Congress expressly bestowed – the *right to sue in state court*. In 12 U.S.C. § 1723a(a), Congress gave Fannie Mae the "power . . . to sue . . . and to complain . . . in any court of competent jurisdiction, *State* or Federal" (emphasis added). If KPMG is correct, *every* defendant in a state court action brought by Fannie Mae would have the absolute right to remove to federal court. Fannie Mae would be powerless to keep a case in state court, no matter the defendant and no matter the issue. The power Congress expressly granted for Fannie Mae to "sue" and "complain" in state court would thus be illusory.

KPMG's argument would also flout any sensible understanding of congressional purpose. This lawsuit provides a striking example. Had virtually any other corporation in America chosen to sue KPMG under state law for negligence and breach of contract, that corporation could have maintained its suit in state court. KPMG's contention, therefore, is that Congress intended in the Charter Act to *single out Fannie Mae* from among America's corporations and deprive it alone of its right to choose a state forum. The Charter Act, in KPMG's view, thus operates as a protection for *defendants* such as KPMG. That interpretation may suit KPMG's interests in seeking to bury this straightforward state-law malpractice action amid the complexity of the massive securities class action, but it is hard to glean from the Charter Act any intent by Congress to benefit accounting firms at the singular expense of Fannie Mae.

7

Compounding the far-fetched nature of KPMG's reading of the Charter Act are the untoward practical consequences. As Congress expected, Fannie Mae purchases millions of loans annually, each of which is potentially subject to a foreclosure action or other dispute with the borrower. Under KPMG's view, each of these borrowers has the absolute right to remove that case to federal court, even though the case may involve only a few hundred dollars and no federal issue of consequence. *See, e.g.*, *Fed. Nat'l Mortgage Ass'n v. Brooks*, 405 S.E.2d 604 (S.C. App. 1991) (affirming judgment setting aside successful bid of $875 at foreclosure sale); *Fed. Nat'l Mortgage Ass'n v. Woody*, 25 Pa. D.&C.3d 604, 1982 WL 531 (Pa. Com. Pl. 1982) (reducing default judgment against mortgagor by $39.82); *Donnelly v. Fed. Nat'l Mortgage Ass'n*, 920 So. 2d 257 (La. 2005) (addressing whether appointment of a curator for mortgagors was appropriate under Louisiana law); *Fed. Nat'l Mortgage Ass'n v. Roberts*, No. 04 CAE 10070, 2005 WL 1785070 (Ohio Ct. App. July 25, 2005) (unpublished opinion) (addressing whether mortgage note had been properly assigned to Fannie Mae). The federal courts should be loath to impute to Congress an intent to flood the courts with such cases.

To be sure, *Fannie Mae* retains the right to bring even relatively small cases to federal court. But Congress justifiably expected that Fannie Mae would use that right judiciously. Fannie Mae routinely litigates foreclosure actions and the like in state court, and although Fannie Mae has been facilitating the spread of homeownership and affordable housing for decades, there are only a relatively small number of reported decisions in which Fannie Mae has turned to the federal courts. In contrast, the entities that Fannie Mae sues are typically one-shot litigants in the housing area and thus, if given an absolute right to remove, would exercise that right solely as their short-term interests dictate, as KPMG's actions here demonstrate.

Nor is there anything in the removal statutes that compels the conclusion that KPMG may remove this action.  Although (as both KPMG and Fannie Mae agree) there would be original jurisdiction in federal court over Fannie Mae's suit against KPMG, that is not dispositive.  *Cf.* 28 U.S.C. § 1441(a) (providing that a civil action is generally removable if the federal courts would have had "original jurisdiction" over the matter).  That is because § 1441(a) governs removal "[e]xcept as otherwise expressly provided by Act of Congress."  Section 1441(a) itself thus contains an exception that directs the federal courts to consider other congressional bars to removal.  In Fannie Mae's case, the Charter Act itself – especially its grant of power to sue in state court – provides that bar.

Finally, KPMG's invocation in its removal papers of § 1331 – federal question jurisdiction – does not alter the analysis.  Fannie Mae has alleged only state law claims of breach of contract and negligence.  There is no federal question on the face of the well-pleaded complaint, and thus there is no federal question jurisdiction under § 1331.  Nor does the presence of the Charter Act change that result.  As the Supreme Court made clear in *Red Cross*, jurisdiction under a charter act of a federal corporation is "jurisdiction based on a separate and independent jurisdictional grant," and thus falls "outside the realm of statutory 'arising under' jurisdiction."  505 U.S. at 258.  Section 1331, therefore, cannot support removal.

## CONCLUSION

Fannie Mae's motion to remand this action to D.C. Superior Court should be granted.

Respectfully submitted.

      /s/

JENNER & BLOCK LLP

Jerome L. Epstein (DC Bar #412824)
Ian Heath Gershengorn (DC Bar #448475)
Jenner & Block LLP
601 13th Street, N.W.
Suite 1200
Washington, D.C. 20005
202-639-6062 (voice)
202-639-6066 (fax)
jepstein@jenner.com

Ronald L. Marmer
C. John Koch
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL  60611-7603
312-222-9350

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FANNIE MAE,<br>3900 Wisconsin Avenue, N.W.<br>Washington, DC 20016<br><br>       Plaintiff,<br><br>       v.<br><br>KPMG LLP,<br>2001 M Street, N.W.<br>Washington, DC 20036<br><br>       Defendant. | NO. 1:06CV02111 (RJL)<br><br>[Proposed] ORDER |

**ORDER GRANTING PLAINTIFF FANNIE MAE'S MOTION TO REMAND**

Pursuant to 28 U.S.C. § 1447(c), the Court grants Plaintiff Fannie Mae's Motion to Remand. It is hereby ORDERED that the action is remanded to the Superior Court of the District of Columbia, Civil Division.

_____
HONORABLE RICHARD J. LEON