**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FANNIE MAE,

       *Plaintiff,*

v.

KPMG LLP,                              No. 1:06-cv-02111 (RJL)

       *Defendant.*

## DEFENDANT KPMG LLP'S OPPOSITION TO
## FANNIE MAE'S MOTION TO REMAND

For the reasons set forth below, Defendant KPMG LLP respectfully opposes Fannie

Mae's motion to remand this action to the Superior Court of the District of Columbia.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.    Fannie Mae Has Repeatedly And Successfully Contended In Federal Court That Its Charter Confers Original Jurisdiction Over Every Case In Which Fannie Mae Is A Party And That Nothing In The Charter Precludes Removal. ...................... 3

II.   Fannie Mae's Corporate Charter Does Not Prohibit Parties Sued By Fannie Mae From Removing To State Court Without Fannie Mae's Consent......................... 6

      A.    The Text And Structure Of Fannie Mae's Charter Do Not "Expressly" Bar Removal To State Court........................................................................ 6

      B.    The "Purpose[s]" And "Practical Consequences" Fannie Mae Invokes Do Not Override The Text Of The Removal Statute.................................... 10

III.  This Court Has Original Subject-Matter Jurisdiction Over This Case. .............. 16

      A.    Fannie Mae's Charter Confers Federal Subject-Matter Jurisdiction Under *Red Cross* Because The Charter Specifically Mentions The Federal Courts. ................................................................................................. 16

      B.    A Narrower Reading Of *Red Cross* Is Unwarranted. ............................. 19

      C.    There Is No Meaningful Difference Between The Red Cross Charter And Fannie Mae's Charter........................................................................... 23

CONCLUSION .................................................................................................. 28

**INTRODUCTION**

Apparently eager to keep this case away from this Court at any cost, Fannie Mae adopts a novel and wholly unfounded position that its charter confers jurisdiction on the federal courts only when **Fannie Mae** decides it wants to be in federal court.  Fannie Mae's argument that it can dictate when federal courts have jurisdiction and that it has an unfettered "right to forum shop" is meritless.  It is inconsistent with *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), and the positions Fannie Mae has espoused in the federal courts for years; it is utterly irreconcilable with the text of Fannie Mae's charter and the text of the removal statute, which requires prohibitions on removal to be "express"; it contradicts multiple of cases holding that a statute (such as Fannie Mae's charter) that authorizes a party to "sue" in state court, does not preclude the removal of such suits to federal court; and it would lead to a host of strange and erroneous outcomes in removal practice.

Fannie Mae's charter authorizes Fannie Mae "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal."  12 U.S.C. § 1723a(a).  Under the Supreme Court's decision in *Red Cross*, that charter confers jurisdiction on the federal courts to hear *any* case in which Fannie Mae is a party.  Indeed, that is the position Fannie Mae has taken in case after case—for years.  Now Fannie Mae has changed position.  While it concedes that its charter would permit **Fannie Mae** to remove a suit to federal court when Fannie Mae is named as a defendant in state court, it contends that its charter "expressly" forbids a party sued by Fannie Mae from removing.  *See* Remand Mtn. at 4, 8.

That argument is meritless.  Fannie Mae's charter does **not** say that defendants that Fannie Mae sues in state court must receive Fannie Mae's "consent" before removing.  And it certainly does not say so "expressly," which is what the removal statute requires.  *See* 28 U.S.C. § 1441(a).  What the charter does say is that Fannie Mae is authorized to "sue" in state or federal

1

court—nothing more.  Remand Mtn. at 7.  Yet courts have repeatedly—and correctly—held that the mere authorization to sue in a state court does not forbid removal:  a license to *sue* in state court is not a license to *keep it* there.  There is no basis for reading the statute to permit Fannie Mae to remove suits from state court, but to bar all other parties from doing so without Fannie Mae's consent.  If Congress had meant Fannie Mae's charter to create this Fannie-specific exception to the removal statute, it would have done so—and would have needed to have done so—expressly.

Apart from the mention of "state court" in its charter, Fannie Mae appeals to the "purpose[s]" of its charter and to the "practical consequences" of permitting removal in this case.  Remand Mtn. at 6, 8.  But Fannie Mae mischaracterizes those purposes and practical consequences, and in any event "purposes" and "consequences" are not enough to carve out an exception to the federal removal statute that simply is not there.

Fannie Mae's motion to remand is a transparent and indefensible effort to keep this Court from considering a case that not only *can* be heard in federal court, but that *should* be heard by *this Court* as part of these consolidated proceedings.  One can only speculate why Fannie Mae would want to re-litigate all of the issues in its complaint in Superior Court when those issues have been percolating in this Court for years (discussed *infra*).  And the counterclaims that KPMG intends to file in response to Fannie Mae's suit, should it survive KPMG's motion to dismiss, also should be heard in this Court.  But whatever its motivation, Fannie Mae does not have a legal leg to stand on, and its motion to remand should be denied.

## ARGUMENT

Fannie Mae's charter grants Fannie Mae the authority "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal."  12 U.S.C. § 1723a(a).  Under *Red Cross*, that provision vests subject-matter jurisdiction in the federal

courts over *all* cases in which Fannie Mae is a party pursuant to the rule that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." 505 U.S. at 255. Because this is a case over which the federal courts would have had original jurisdiction, it can be removed under the federal removal statute. 28 U.S.C. § 1441(a). That statute authorizes the removal of all cases over which district courts have original jurisdiction "except as otherwise ***expressly provided by Act of Congress***." *Id* (emphasis added).[1] Because there is original jurisdiction over this case, and because there is no "express" exception in Fannie Mae's charter (or any other statute) to the federal removal statute, this case is properly before this Court.

**I.      Fannie Mae Has Repeatedly And Successfully Contended In Federal Court That Its Charter Confers Original Jurisdiction Over Every Case In Which Fannie Mae Is A Party And That Nothing In The Charter Precludes Removal.**

Before turning to the statutory analysis, it is notable that Fannie Mae's position before this Court conflicts with the positions it has repeatedly and successfully urged upon the federal courts in prior cases. In previous filings in many different cases, Fannie Mae has taken the position that its charter vests the federal courts with jurisdiction over any case in which Fannie Mae is a party, and that any such case can be removed.

Indeed, Fannie Mae has repeatedly invoked its charter to remove cases from state court to federal court. *Grun v. Countrywide Home Loans, Inc.*, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004) (Fannie Mae removal from state court to federal court under its charter); *Knuckles v.*

---

[1] Section 1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

*RBMG, Inc.*, No. 2:03cv02414 (W.Va. Jan. 23, 2004) (same); *Connelly v. Fed. Nat'l Mortgage Ass'n*, 251 F. Supp. 2d 1071 (D. Conn. 2003) (same); *Radatz v. Fed. Nat'l Mortgage Ass'n*, No. 1:03cv1945 (N.D. Ohio Nov. 11, 2003) (same); *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 891 F. Supp. 371, 372 (S.D. Tex. 1994) (same); *People's Mortgage Co. v. Fannie Mae*, 856 F. Supp. 910, 917 (E.D. Pa. 1994) (same). Indeed, in these very MDL proceedings, Fannie Mae invoked charter jurisdiction to remove a case initially filed in Superior Court to this Court. *See* Notice of Removal of Defendant Fannie Mae, *Stern v. Raines et al*, No. 1:05-cv-00352 (D.D.C. Feb. 18, 2005). Fannie Mae also has filed cases in federal court, asserting its charter as the basis for federal court jurisdiction. *See, e.g.*, *Fed. Nat'l Mortgage Ass'n v. Sealed*, No. 06-cv-1839 (D.D.C. Oct. 27, 2006); *Federal Nat'l Mortgage Ass'n v. Okeke*, No. 04-04405 (S.D. Tex. 2004).

In taking these positions, Fannie Mae has repeatedly described the scope of charter jurisdiction in sweeping terms. It has stated that "the 'sue or be sued' provision in Fannie Mae's charter . . . is sufficient to demonstrate Congress's intent to confer original federal court jurisdiction **over cases in which Fannie Mae is a party**." Mem. in Opposition to Pls' Mot. to Remand at 3, *Knuckles v. RBMG, Inc.*, No. 2:03-cv-02414 (W. Va. Jan. 23, 2004) (emphasis added). Similarly, Fannie Mae has dismissed the suggestion that its charter limits the ability to remove. It has stated, for example, that "the reference to 'state . . . court' in Fannie Mae's charter **is no impediment to removal**"—precisely the opposite position it takes here. *See* Defs' Opposition to Pls' Mot. to Remand at 2, *Radatz v. Fed. Nat'l Mortgage Ass'n*, No. 1:03-cv-1945 (N.D. Ohio Nov. 3, 2003) (emphasis added). And just last October, Fannie Mae told another D.C. District Court judge that through the charter "Congress sought to guarantee the nationwide uniformity and sensitivity to federal issues that comes with federal court jurisdiction . . . ."

Response to Order of Court Dated October 27, 2006 at 1, *Fed. Nat'l Mortgage Ass'n v. Sealed*,

No. 06-cv-1839 (D.D.C. Oct. 27, 2006).[2]

---

[2]  It is instructive that, contrary to their current position, Fannie Mae has represented the following to this district court:

> This Court has subject matter jurisdiction over these claims based on a direct grant of original jurisdiction by Congress in § 309 of the Fannie Mae Charter, codified at 12 U.S.C. § 1723a. Section 1723a(a) provides, in relevant part, "Each of the bodies corporate named in section 1723a(2) of this title shall have power to . . . sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1723a(a).  In light of Fannie Mae's purpose to increase the availability of mortgage credit to low- and moderate-income Americans nationwide, Congress's decision to permit Fannie Mae to invoke the protections of a federal forum is sensible.  Congress sought to guarantee the nationwide uniformity and sensitivity to federal issues that comes with federal court jurisdiction before allowing such a serious disruption to this critical national undertaking.  *See* H.R. Rep. No. 1585 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2873, 2945 (noting that provisions of Fannie Mae's Charter Act "constitute Government recognition of the significance of the corporation['s] operations to the national interest aspect of the mortgage financing industry.").

> Relying on § 1723a, Fannie Mae has routinely sought and been afforded the protections of a federal forum. In *American Nat'l Red Cross v. S.G.,* 505 U.S. 247 (1992), the Supreme Court held that similar language in the Red Cross charter conferred federal court jurisdiction because it "expressly authorize[ed] the organization to sue and be sued in federal courts."  *See also Grun v. Countywide Home Loans, Inc.*, No. SA-03-CA-141-EP, 2004 WL 1509088, *2 (W.D. Tex. April 9, 2003) (holding that under *Red Cross*, the sue and be sued provision in Fannie Mae's charter confers federal jurisdiction to decide state law property claims because the charter "clearly mentions federal courts"); *Connelly v. FNMA*, 251 F. Supp. 2d 1071 (D.Conn. 2003) (following removal by Fannie Mae to District Court, Court applied *Red Cross* in holding that § 1723a conferred original jurisdiction over state law foreclosure claims brought against Fannie Mae); *Peoples Mortgage Co. v. FNMA*, 856 F. Supp. 910, 917 (E.D. Pa. 1994) (following Fannie Mae's removal of the case to District Court, Court held that Section 1723a confers subject matter jurisdiction to decide Pennsylvania state law contract claims brought against Fannie Mae); *C.C. Port, Ltd v. Davis-Penn Mortgage Co.*, 891 F. Supp. 371, 372 (S.D. Tex. 1994) (Section 1723a confers subject matter jurisdiction to decide Texas state law claims brought against Fannie Mae).

> In each of these cases, § 1723a was held to confer subject matter jurisdiction for the federal district court to decide state law claims.

*Id.* at 1-2.

5

**II.    Fannie Mae's Corporate Charter Does Not Prohibit Parties Sued By Fannie Mae From Removing To State Court Without Fannie Mae's Consent.**

Now, Fannie Mae has changed its position and claims that it ***alone*** has a unique ability to "forum shop" because the existence of federal court jurisdiction in any given case turns on whether ***Fannie Mae*** wants to be in federal court.  Fannie Mae does ***not*** dispute that its charter creates original federal jurisdiction over this case, or that the federal removal statute authorizes defendants to remove any case over which a district court has original jurisdiction unless Congress "expressly" provides otherwise.  Remand Mtn. at 2, 5, 9.  Fannie Mae's argument boils down to the textually unjustified assertion that its charter "expressly" forbids any defendant Fannie Mae sues in state court from removing unless Fannie Mae consents.  Remand Mtn. at 9. That contention is without merit.

**A.    The Text And Structure Of Fannie Mae's Charter Do Not "Expressly" Bar Removal To State Court.**

Fannie Mae's reading of its charter is inconsistent with the charter's plain text and its structure.  On its face, the charter says nothing whatsoever about removal, let alone creates the express "Fannie-only" exception to the federal removal statute that Fannie Mae proposes.  The charter confers on Fannie Mae the ***authority*** (and attendant federal jurisdiction) to sue or be sued in federal or state court, and that is all.

Fannie Mae contends that the text of the charter "expressly" forecloses removal, because the charter authorizes Fannie Mae to "sue" and "complain" in state court.  Remand Mtn. at 7. More specifically, Fannie Mae contends that permitting removal in this case "would pervert statutory text by depriving Fannie Mae of one of the rights Congress expressly bestowed—the ***right to sue in state court***."  Remand Mtn. at 7 (emphasis in original).  But the charter simply confers on Fannie Mae the power to ***commence*** an action in state court—not the right to litigate it to judgment no matter what actions the defendant takes.  The power to ***initiate*** suit in state

6

court does not carry with it the power to keep it there.  Removals thus leave Fannie Mae's power to "sue" in state court unaffected.

Tellingly, Fannie Mae cites no case in support of its position that an authorization to sue in state court expressly forecloses removal, perhaps because courts have repeatedly rejected that position.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), for example, the Supreme Court unanimously rejected an argument nearly identical to the one Fannie Mae advances here—that an authorization to "maintain" suit in "any Federal or State court of competent jurisdiction" under § 216(b) of the Fair Labor Standards Act of 1938 confers an absolute and express right on a plaintiff to proceed in state court that precludes a defendant from removing pursuant to § 1441(a).  *See id.* at 697-98.  The Court reasoned that "removal does nothing to defeat" a "right to maintain an action" because "removal just transfers it from one forum to another."  *Id.* at 698.  And even "[a]s between a state and federal forum," the Court continued, "the statute seems to betray an indifference, with its provision merely for maintaining action 'in any Federal or State Court.'"  *Id.*

*Breuer* forecloses Fannie Mae's argument that its statutory authorization to sue in state court overrides the federal removal statute.  Just as the statutory right to "maintain" an action in state court was insufficient in *Breuer* to override the removal statute, so too Fannie Mae's statutory right to "sue" or "complain" in state court cannot override the removal statute in this case.

Nor is *Breuer*'s reasoning limited to the Fair Labor Standards Act.  For example, in *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), Judge Easterbrook, citing *Breuer*, rejected the argument that a federal statutory right to sue in state court under the Telephone Consumer Protection Act precluded defendants sued under that provision from removing to federal court under § 1441(a).  *Id.* at 450-51.  That right to sue, Judge Easterbrook

7

explained, did "not mention removal," did not "declare state jurisdiction to be exclusive," and therefore did not "expressly override a defendant's removal rights" under § 1441(a). *Id.* at 450. Fannie Mae's charter is likewise silent on each of those scores, and thus also does not preclude removal.

Courts in other contexts have also routinely rejected Fannie Mae's argument that an authorization to sue in state court precludes defendants from removing to federal court. The Clean Air Act, for instance, permits state authorities to sue the federal government in state court under the Act. *See* 42 U.S.C. § 7604(e)(1). But that ***authorization*** to sue in state court does not ***foreclose*** defendants from removing to federal court. *See City of Jacksonville v. Dep't of the Navy*, 348 F.3d 1307, 1311-12 (11th Cir. 2003). The Fair Credit Reporting Act permits actions under it to be "brought" in any "court of competent jurisdiction"—including in state court. 15 U.S.C. § 1681p. But that ***authorization*** to sue in state court does not ***foreclose*** removing to federal court under § 1441(a). *See, e.g.*, *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1263-64 (11th Cir. 1998); *Haun v. Retail Credit Co.*, 420 F. Supp. 859, 862 (W.D. Penn. 1976) ("Permitting a suit to be 'brought' in a particular court allows the plaintiff to commence an action in that court, but it does not connote an assurance that he will be able to keep it there."). Likewise, the Agricultural Adjustment Act permits plaintiffs to sue in either federal or state court. 7 U.S.C. § 1365. Once again, that ***authorization*** to sue in state court does not ***foreclose*** removal under § 1441(a). *See Beckman v. Graves*, 360 F.2d 148, 149 (10th Cir. 1966) ("Although the statute gives the farmer (appellant) a choice of forum, it does not guarantee that his choice shall remain undisturbed."). Those cases are irreconcilable with Fannie Mae's position that its authorization to sue in state court expressly prohibits removal. Accepting that position would thus revolutionize the law of removal.

Indeed, courts have held that the identical language authorizing the Secretary of Housing and Urban Development to "sue and be sued in any court of competent jurisdiction, State or Federal" does not prohibit the removal of a suit brought by the Secretary from state court to federal court. 12 U.S.C. § 1702. In *Sarner v. Mason*, 228 F.2d 176, 178-79 (3d Cir. 1955), the Third Circuit held that that language in the predecessor statute to § 1702 "was not intended to affect and did not affect the right of removal." The court in *James River Apartments, Inc. v. Fed. Housing Admin.*, 136 F. Supp. 24, 27-29 (D. Md. 1955), agreed, finding "nothing in the language of section 1702 to sustain the construction that the removal statutes were thereby impliedly repealed." The identical language in § 1723a(a) should be interpreted the same way: not to foreclose removal.[3]

Moreover, Fannie Mae's charter can be contrasted with the numerous other statutes that do, in fact, "expressly" prohibit removal: a simple comparison of this sort confirms that Fannie Mae's charter lacks the express language necessary to preclude removal. As the Court in *Breuer* observed, "[a] number of other statutes" contain "indisputable prohibitions of removal." *Breuer*, 538 U.S. at 696 (citing 28 U.S.C. § 1445 (listing several types of nonremovable actions, including § 1445(a), which provides that "[a] civil action in any State court against a railroad or its receivers or trustees . . . may not be removed to any district court of the United States"), 15 U.S.C. § 77v(a), § 1719 ("No case arising under [the Interstate Land Sales Disclosure Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States . . ."), § 3612 (removal prohibited under the Condominium and Cooperative Abuse

---

[3] Some of these cases pre-date *Red Cross* and hold that § 1702 of the National Housing Act does not provide an independent basis for subject-matter jurisdiction. That aspect of these decisions is invalid under *Red Cross*. But the reasoning of the decisions—that the authorization to sue in state court does not preclude removal—remains directly on point and negates Fannie Mae's position.

Relief Act of 1980)).  Indeed, in the jurisdictional provisions of the Financial Institutions

Reform, Recovery, and Enforcement Act of 1989, Congress expressly limited the right to remove

certain actions involving the Reconstruction Trust Corporation—another federally chartered

corporation.  *See California v. Keating*, 986 F.2d 346, 348-49 (9th Cir. 1993).

These provisions show that "[w]hen Congress has wished to give plaintiffs,"—indeed,

federally chartered corporations—"an absolute choice of forum, it has shown itself capable of

doing so in unmistakable terms." *Breuer*, 538 U.S. at 696 (internal quotation marks omitted).

Conspicuously, it did not do so in the Fannie Mae charter, let alone in the "express" terms the

removal statute requires.

**B.     The "Purpose[s]" And "Practical Consequences" Fannie Mae Invokes
        Do Not Override The Text Of The Removal Statute.**

Fannie Mae also contends that the "purpose[]" of its charter and the purportedly

"untoward practical consequences" of permitting removal in this case demonstrate that Congress,

without saying so, "expressly" provided Fannie Mae a veto-right over a defendant's right to

remove.  Remand Mtn. at 6, 8.  That is not so.

To begin with, the "purposes" of the charter and "practical consequences" of permitting

removal cannot override the plain text of the charter and the federal removal statute.  If a

"statute's language is plain, the sole function of the courts—at least where the disposition

required by the text is not absurd—is to enforce it according to its terms." *Hartford

Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *see also Cooper Inds.,

Inc. v. Aviall Servs. Inc.*, 543 U.S. 157, 167 (2004) (noting that if a statue has a "clear meaning

. . . there is no need to . . . consult [its] purpose").  That rule forecloses Fannie Mae's appeal to

"consequences" and its self-serving characterization of its statutory purposes, for it is perfectly

clear that the charter's text creates ***no*** exception—let alone an "express" exception—to the

10

removal statute.  And not even Fannie Mae can bring itself to suggest that the consequences of permitting removal here would lead to "absurd" results.  Remand Mtn. 8.

Not surprisingly, the Supreme Court in *Breuer* swiftly dispatched a similar argument.  In *Breuer*, the plaintiff also made a "pragmatic appeal" about the untoward consequences of allowing claims for "small amounts" to be removed under the Fair Labor Standards Act.  538 U.S. at 699.  In a unanimous ruling, the Supreme Court held that these "pragmatic appeals" did not trump statutory text.  Fannie Mae's "pragmatic appeal" in this case should likewise be rejected.

Fannie Mae is in any event incorrect that removal here would interfere with "Fannie Mae's congressionally-chartered mission."  Remand Mtn. at 6.  Fannie Mae nowhere explains how allowing it access to state court at its own election would assist its "mission," or even troubles to specify what aspect of its "mission" such a rule would advance.  Even if one indulges Fannie Mae's contention that Congress "ensured that Fannie Mae would have access to a federal forum when its federal mission would be threatened," (Remand Mtn. at 6), nothing shows that Congress intended to have ***Fannie Mae alone*** decide when litigation in federal court would advance its mission.  And in any event, given that Fannie Mae's regulator, the SEC, and various congressional committees have all stated that the issues involved in this litigation go to the heart of the "safety and soundness" of the Fannie Mae enterprise, it is extraordinary for Fannie Mae to contend with a straight face that the issues raised by this case do not implicate or touch upon its mission.

Indeed, Fannie Mae has removed cases based on:

● ***state law property claims*** (*see Grun v. Countrywide Home Loans*, 2004 WL 1509088 (W.D. Tex. July 1, 2004) (action against Fannie Mae brought by 93-year-old incapacitated widow, on grounds that the mortgage was void, to prevent

Fannie Mae from appropriating her single-family home); *Connelly v. Fed. Nat'l Mortgage Ass'n*, 251 F. Supp. 2d 1071 (D. Conn. 2003) (action brought by executors of an estate claiming that foreclosure on decedent's home was void); C.*C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 891 F. Supp. 371, 372 (S.D. Tex. 1994) (action claiming that the prepayment premium on a note held by Fannie Mae was usurious)); and

- **state law-based breach of contract claims** (*People's Mortgage Co. v. Fannie Mae*, 856 F. Supp. 910, 917 (E.D. Pa. 1994) (contract and tort dispute between Fannie Mae and a mortgage-service provider over termination of a mortgage-service contract)).

Fannie Mae has also sued in federal court, invoking its charter as the basis for federal subject-matter jurisdiction, asserting **state-law fraud and negligence claims**. *See, e.g.*, Complaint, *Fed. Nat'l Mortgage Ass'n v. Okeke*, No. 04cv4405, 2004 WL 3721311 (S.D. Tex. 2004) (tort law action under Texas law against person who filed a false lien on property owned by Fannie Mae). It is simply not plausible for Fannie Mae to contend that these cases, in which it has been the proponent of federal jurisdiction, touch upon its mission in more significant degrees than the high-stakes issues in this case. And in any event, the charter does not draw distinctions between and among the types of suits in which Fannie Mae might be involved. That alone should end the analysis. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (holding that where a statute "applies without differentiation to all the categories" that are its subject, "[t]o give these same words a different meaning for each category would be to invent a statute rather than interpret one").

Moreover, in invoking federal jurisdiction in all of these cases, Fannie Mae has repeatedly informed the federal judiciary that "Congress sought to guarantee the nationwide

uniformity and sensitivity to federal issues that comes with federal court jurisdiction . . ."  Mem. in Opposition to Pls' Mot. to Remand at 4, *Knuckles v. RBMG, Inc.*, No. 2:03cv02414 (W.Va. Jan. 23, 2004).  And Fannie Mae also has described the Congress's "purpose" in enacting the "sue and be sued clause" as to ensure that "Fannie Mae would be governed by a uniform body of federal law."  *Id.* at 2.  The purpose of securing uniformity in cases involving Fannie Mae is, of course, served by permitting removal to federal court in *every* case regardless of whether Fannie Mae's management happens to agree in any particular case.

Equally unpersuasive is Fannie Mae's professed concern that allowing defendants to remove cases Fannie Mae has brought in state court will "flood the courts" with cases involving Fannie Mae.  Remand Mtn. at 8.  Fannie Mae's charter has been in force since the Housing Act of 1954, *see* P.L. 68-560, 68 Stat. 612, 620 (1954), yet no "flood" of removed actions originally filed by Fannie Mae has materialized.  And virtually every reported case involving Fannie Mae is a case Fannie Mae brought itself in federal court or removed from state court to federal court.

Indeed, it is the "practical consequences" of Fannie Mae's position that would cause "untoward" results.  Remand Mtn. at 8.  If Fannie Mae is right that its power to sue in state court absolutely forecloses disturbing its choice of forum, then the same result should follow *whenever* Fannie Mae sues or is sued in *whatever court*.  If so, as the Supreme Court noted in *Breuer*, "it would seem that" cases involving Fannie Mae "could never be transferred to a different one . . . a result that would plainly clash with the provision for change of venue."  *Breuer*, 538 U.S. at 698.  Taking its "choice of forum" argument to the extreme, Fannie Mae's position would mean, for example, that courts would be powerless to transfer actions involving Fannie Mae under the Multidistrict Litigation transfer statute.  *See* 28 U.S.C. § 1407.  The result would be a morass of duplicative litigation in complex cases involving Fannie Mae all around the country—such as the avalanche of pending lawsuits arising out of Fannie Mae's alleged massive accounting fraud,

many of which are pending before this Court only because they were transferred here under § 1407. Fannie Mae's charter makes plain that it does not work those implausible results.

Fannie Mae also launches a baseless *ad hominem* attack upon KPMG's motives for removing this case. Fannie Mae accuses KPMG of favoring an interpretation of Fannie Mae's charter that "suit[s] KPMG's interests," that would "benefit accounting firms at the singular expense of Fannie Mae," and that would uniquely "*single out Fannie Mae* from among America's corporations" for maltreatment. Remand Mtn. at 7 (emphasis in original). This, again, is preposterous. A proper interpretation of Fannie Mae's charter would confer removal rights, not "just on KPMG" but on all defendants sued by Fannie Mae, and those defendants would simply have the ***same rights that Fannie Mae has***: the power to remove pursuant to § 1441(a). Moreover, it is Fannie Mae that seeks an interpretation that "suits its interests." Virtually every other party in the federal system bears the risk that a case will be removed if a federal court would have had original jurisdiction over the action. Fannie Mae wants a special rule, just for it, that would give it a veto-right over removal that no other litigant has, and that Congress did not give it. The removal statute applies to Fannie Mae, just like it applies to every other litigant.

Fannie Mae also criticizes KPMG for seeking "to bury this straightforward state-law malpractice action amid the complexity of the massive securities class action." Remand Mtn. at 7. But this purported "state law malpractice action" arises out of the exact same alleged massive accounting fraud perpetrated by Fannie Mae's current and former officers and directors as do the numerous securities class actions currently pending before this Court. Fannie Mae's lawsuit seeks damages resulting from the same investigations, restatements, and lawsuits that are the subject of the class action and involves the same complex accounting transactions, standards, and policies. Indeed, Federal Rule of Civil Procedure 13(g) contemplates that Fannie Mae's

14

malpractice claim against KPMG would be a cross-claim in the securities action—just as KPMG's claims against Fannie Mae will be. *See* Fed. R. Civ. P. 13(g).[4]  And under Fannie Mae's own construction of its charter, if Fannie Mae had sued initially in this Court, this Court would have jurisdiction.  There is thus no question that Fannie Mae could be here if it wanted to be.

It is plainly more efficient for this Court to preside over this case instead of a Superior Court judge who must start afresh.  Indeed, given the obvious kinship between Fannie Mae's malpractice action and the actions pending before this Court, one wonders what moves Fannie Mae to strain so mightily to keep this case off of this Court's docket.  One might surmise that Fannie Mae has canvassed the solid wall of federal court cases that dismiss these types of "malpractice" claims against accountants on *in pari delicto* and other grounds based on the fraud committed by their current and former officers and directors.  *See, e.g.*, *Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006) (dismissing, on 12(b)(6), a malpractice claim brought against accounting firm by a former client under the *in pari delicto* doctrine based on the misconduct of officers of the audit client); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001) (same); *Dublin Secs., Inc.*, 133 F.3d 377 (6th Cir. 1997) (same); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093-94 (2d Cir. 1995) (same).

It is enough to say that if there is a nefarious "motive" behind the parties' litigating positions with respect to removal jurisdiction, it is not KPMG's.

---

[4]  Rule 13(g) provides that "[a] pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein . . .").

### III.    This Court Has Original Subject-Matter Jurisdiction Over This Case.

There is no dispute between the parties here that Fannie Mae's corporate charter confers original jurisdiction on this Court.  *See* Remand Mtn. at 9.  As it does in this case, Fannie Mae has repeatedly taken the position in the federal courts that its corporate charter does create such jurisdiction.[5]  Nonetheless, the D.C. Circuit has not squarely decided whether Fannie Mae's corporate charter is jurisdiction conferring.  Judge Walton, moreover, recently ruled that Fannie Mae's corporate charter does not confer original subject-matter jurisdiction.  *See Fed. Nat'l Mortgage Ass'n (Fannie Mae) v. Sealed*, 457 F. Supp. 2d 41 (D.D.C. 2006).  To reassure this Court that it has subject-matter jurisdiction over this case, KPMG explains why it respectfully disagrees with Judge Walton's ruling and reasoning, neither of which, as this Court is well aware, is binding.  *See*, *e.g.*, *In re Executive Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) ("District Court decisions do not establish the law of the circuit . . . nor, indeed, do they even establish 'the law of the district.'" (citations omitted)).

### A.    Fannie Mae's Charter Confers Federal Subject-Matter Jurisdiction Under *Red Cross* Because The Charter Specifically Mentions The Federal Courts.

Fannie Mae's corporate charter specifically mentions the federal courts and therefore confers original jurisdiction on this Court.  That conclusion follows from the clear-statement rule explicated and applied in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992):  that a

---

5  *See, e.g.*, Mem. in Opposition to Pls' Mot. to Remand, *Knuckles v. RBMG, Inc.*, No. 2:03cv02414 (W.Va. Jan. 23, 2004); Defs' Opposition to Pls' Mot. to Remand, *Radatz v. Fed. Nat'l Mortgage Ass'n*, No. 1:03cv1945 (N.D. Ohio Nov. 11, 2003); Notice of Removal of Def. Fannie Mae, *Stern v. Raines et al*, No. 1:05cv00352 (D.D.C. Feb. 18, 2005) (noting Fannie Mae's removal from D.C. Superior Court to D.C. District Court); Complaint, *Federal Nat'l Mortgage Ass'n v. Okeke*, No. 04-4405 (S.D. Tex. 2004).

federal corporate charter confers federal jurisdiction "if, but only if, it specifically mentions the federal courts." *Id.* at 255.

*Red Cross* held that, beginning in a series of cases dating from 1809, the Supreme Court had "placed Congress on prospective notice of the language necessary and sufficient to confer jurisdiction" in the federal courts via a federal corporate charter. 505 U.S. at 252 (emphasis added). The Court found that Chief Justice Marshall had identified such language in *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809). *Deveaux* held that the federal "sue or be sued" provision in the charter of the first Bank of the United States did not create federal jurisdiction. *Id.* at 85-86. But in doing so the Court contrasted that provision with another clause in the first Bank's charter, which authorized suit against the Bank's officers, explicitly mentioned the federal courts, and therefore "'expressly authorize[ed] the bringing of that action in the federal or state courts.'" *Red Cross*, 505 U.S. at 253 (quoting *Deveaux*, 9 U.S. (5 Cranch) at 86). According to the *Red Cross* Court, Chief Justice Marshall's comparison of those two provisions in the first Bank's charter established "the degree of specificity required" in a federal "sue or be sued" provision "for a jurisdictional grant," 505 U.S. at 255: that a "sue or be sued" clause confers federal jurisdiction if and only if it mentions the federal courts.

Later Supreme Court decisions firmly embedded that express-statement rule, furnishing a clear standard against which Congress has enacted federal corporate charters for nearly two centuries. The next relevant case *Red Cross* considered was *Osborn v. Bank of United States*, 22 U.S. (9 Wheat) 738 (1824)—another opinion of Chief Justice Marshall's—which held that the "sue or be sued" clause of the second Bank of the United States' charter conferred federal subject-matter jurisdiction. *See id.* at 817-18. According to *Red Cross*, *Osborn* held that the "express federal reference" to the federal courts in the second Bank's charter "confer[red] a right to sue"—that a specific reference to the federal courts was a "jurisdictional grant sufficiently

17

stated." *Red Cross*, 505 U.S. at 256. *Osborn* based its holding, in other words, on "the charter's

mention of the federal courts." *Id.* at 256 n.8. *Red Cross* also observed that *Osborn* had

explicitly contrasted the second Bank of the United States' charter—which specifically

mentioned the federal courts—with the first Bank's charter at issue in *Deveaux*, which simply

conferred "'a general capacity . . . to sue, ***without mentioning the courts of the Union.***'" 505

U.S. at 253 (quoting *Osborn*, 22 U.S. (9 Wheat) at 818) (emphasis added). *Osborn* thus

confirmed the rule that a federal charter's "sue or be sued" provision conferred federal subject-

matter jurisdiction if it specifically mentioned the federal courts.

The Court reaffirmed the *Osborn* plain-statement rule in *D'Oench, Duhme & Co. v.

FDIC*, 315 U.S. 447 (1942). *Red Cross* read *D'Oench* to have held that the FDIC's charter

conferred jurisdiction because the charter "mentioned the federal courts in general." *Red Cross*,

505 U.S. at 257. And in view of this long line of cases establishing what *Red Cross* described as

"language necessary and sufficient to confer jurisdiction," *Red Cross* ruled that "[i]n expressly

authorizing the [*Red Cross*] to sue and be sued in federal courts" the *Red Cross*'s charter

"suffice[d] to confer federal jurisdiction." *Id.*

Under the rule established by *Deveaux, Osborn, D'Oench*, and *Red Cross*, Fannie Mae's

corporate charter confers federal subject-matter jurisdiction in this case. Fannie Mae's charter

grants Fannie Mae authority "in its corporate name, to sue and to be sued, and to complain and to

defend, in any court of competent jurisdiction, State ***or Federal***," 12 U.S.C. § 1723a(a)

(emphasis added). Its authorization to Fannie Mae to sue in "Federal" courts is a specific

mention of the federal courts. Indeed, Fannie Mae's charter is a virtual carbon-copy of the Red

Cross charter. The Red Cross charter authorized the Red Cross to "sue and be sued in courts of

law and equity, State or Federal, ***within the jurisdiction of the United States***." *Red Cross*, 505

U.S. at 249 (emphasis added). There is no material difference between language authorizing suit

18

in any federal court of "competent jurisdiction" and language authorizing suit in federal court

"within the jurisdiction of the United States." *Red Cross* therefore compels the conclusion that

Fannie Mae's corporate charter confers federal jurisdiction.

Courts have repeatedly agreed.  As Judge Walton candidly acknowledged in his recent

decision, "several district courts in other Circuits have held that § 1723a(a) confers original

jurisdiction upon federal courts to decide state law claims involving Fannie Mae." *Fannie Mae*,

457 F. Supp. 2d at 43 n.1.  In *Grun v. Countrywide Home Loans, Inc.*, 2004 WL 1509088, at *2

(W.D. Tex. July 1, 2004), for example, the court squarely held that, under *Red Cross*, Fannie

Mae's "sue or be sued" provision confers federal jurisdiction.  The court in *Connelly v. Federal

National Mortgage Association*, 251 F. Supp. 2d 1071 (D. Conn. 2003), likewise noted that

Fannie Mae "removed this case from state court pursuant to 28 U.S.C. § 1441, invoking this

Court's original jurisdiction under 12 U.S.C. § 1723a," *id.* at 1072-73; *see also C.C. Port, Ltd. v.

Davis-Penn Mortgage Co.*, 891 F. Supp. 371, 372 (S.D. Tex. 1994), *aff'd on other grounds*, 61

F.3d 288 (5th Cir. 1995); *People's Mortgage Co. v. Fannie Mae*, 856 F. Supp. 910, 917 (E.D. Pa.

1994); *Fannie Mae*, 457 F. Supp. 2d at 43 n.1 (collecting authorities).  Precedent thus confirms

that Fannie Mae's corporate charter confers jurisdiction here.

### B.    A Narrower Reading Of *Red Cross* Is Unwarranted.

Judge Walton broke ranks from those authorities by reading *Red Cross* more narrowly.

Judge Walton agreed that Fannie Mae's corporate charter specifically mentions the federal

courts.  But Judge Walton did not agree that a federal corporate charter confers jurisdiction under

*Red Cross* if it mentions the federal courts.  *Fannie Mae*, 457 F. Supp. 2d at 43-44.  Instead, he

understood *Red Cross* to mean that the specific mention of the federal courts in Fannie Mae's

charter does not "*categorically foreclose*" a reading of the charter as "confer[ring] original

federal jurisdiction in all actions in which Fannie Mae is a party." *Id.* 43 (emphasis in original).

19

Judge Walton thought that *Red Cross* "nowhere state[d] [or] inferred" that the "presence of an express reference to the federal courts" in a federal charter "is sufficient to *compel*" the conclusion that it creates federal subject-matter jurisdiction.  *Id.*  KPMG respectfully disagrees.

In support of his narrower interpretation of *Red Cross*, Judge Walton twice relied on the *Red Cross* dissent.  *See id.* at 43-44, 44 n.2.  Judge Walton quoted the dissent's reasoning that "Supreme Court case law" prior to *Red Cross* "'simply reflect[s] the fact that the natural reading of *some* "sue and be sued" clauses is that they confer both capacity and jurisdiction.'"  457 F. Supp. 2d at 43-44 (quoting 505 U.S. at 265 (Scalia, J., dissenting)).  But the *Red Cross* majority—which controls over the *Red Cross* dissent—rejected the dissent's reading of those cases.  *See* 505 U.S. at 255 n.6, 256 n.7, 257 n.9, 263 n.15.

Far from supporting Judge Walton's narrow reading of *Red Cross*, the dissent repeatedly rejected it.  The dissent read *Red Cross* to "conclude[] that **whenever** a statute granting a federally chartered corporation the 'power to sue and be sued' specifically mentions the federal courts . . . the law will be deemed . . . to confer on federal district courts *jurisdiction* over any and all controversies to which that corporation is a party."  *Id.* at 265 (Scalia, J., dissenting) (second emphasis in original).  The dissent described the Court majority's "theory" as being that "a 'sue or be sued clause' confers federal jurisdiction 'if, but only if, it specifically mentions the federal courts.'"  *Id.* at 268 (Scalia, J., dissenting) (quoting *id.* at 255 (majority opinion)).  The dissent repeated that characterization several other times.[6]  In other words, the dissent read *Red*

---

6  *See id.* at 270 (Scalia, J., dissenting) (criticizing the Court for reading the case law to establish what he termed "the weird principle that mention of the federal courts *in a "sue and be sued" clause* confers jurisdiction" (emphasis in original)); *id.* at 271-72 (Scalia, J., dissenting) (describing "the rule which the Court announces today" as being that "*any* grant of a general capacity to sue *with* mention of federal courts will suffice to confer jurisdiction"

[Footnote continued on next page]

*Cross* to hold what Judge Walton thought it did not hold: that "the mere presence of" a reference to the federal courts "is sufficient to *compel*" the conclusion that it confers jurisdiction. *Fannie Mae*, 457 F. Supp. 2d at 43 (emphasis in original). And "[t]ellingly, the majority did not negate" the dissent's characterization of its holding. *Clark v. Martinez*, 543 U.S. 371, 379 (2005) (adopting the reading of *Zadvydas v. Davis*, 533 U.S. 678 (2001) "espoused by the *Zadvydas* dissenters" where the *Zadvydas* majority did not dispute the dissent's characterization of its holding).

Judge Walton also relied on another quotation from the *Red Cross* dissent. "[A]s Justice Scalia notes in his dissent in *American National Red Cross*," Judge Walton said, if Fannie Mae's corporate charter confers federal subject-matter jurisdiction, it also permits Fannie Mae "'to enter a state court without establishing an independent basis of jurisdiction appropriate under state law.'" 457 F. Supp. 2d at 44 n.2 (quoting *Red Cross*, 505 U.S. at 268 (Scalia, J., dissenting)). Judge Walton (following Justice Scalia) feared that that reading "'would present serious constitutional questions.'" 457 F. Supp. 2d at 44 n.2 (quoting *Red Cross*, 505 U.S. at 268 (Scalia, J., dissenting)).

Again, however, the *Red Cross* majority opinion did not agree. The Court addressed Judge Walton's and Justice Scalia's concern by pointing out that it did not read the Red Cross charter to confer ***jurisdiction*** in state court in addition to federal court. "[T]he reference to state as well as federal courts," the Court majority explained, "presumably was included lest a mention of federal courts alone (in order to grant jurisdiction to them) be taken as motivated by an intent to confer exclusive federal jurisdiction." *Red Cross*, 505 U.S. at 263 n.15. Moreover,

---

[Footnote continued from previous page]
   (emphasis in original)); *id.* at 272 (Scalia, J., dissenting) (accusing the majority of giving "talismanic significance to any 'mention' of federal courts").

the Court continued, Congress referred to state as well as federal courts because it may have worried that using "the word 'Federal' to confer federal jurisdiction would be misread to limit the Red Cross's capacity to sue in state courts, if it were not reaffirmed by explicit inclusion of the word 'State.'" *Id.* *Red Cross* thus confronted and rejected the very reasoning in Justice Scalia's dissent that Judge Walton adopted.  Judge Walton should have followed the *Red Cross* majority opinion, not the dissent.

The only language in the *Red Cross* majority opinion on which Judge Walton relied also does not support his narrower reading of Fannie Mae's charter.  Judge Walton quoted the Court's statement that "'a sue and be sued' provision '*may* be read to confer federal jurisdiction if, but only if, it specifically mentions the federal courts.'"  457 F. Supp. 2d at 43 (quoting 505 U.S. at 255) (emphasis in original).  According to Judge Walton, that sentence showed that the Court held that a specific mention of the federal courts "does not categorically foreclose" reading a federal corporate charter to confer jurisdiction.  *Id.*

Judge Walton's reliance on this single sentence in *Red Cross* was misplaced.  In context, that sentence did not state that a mention of the federal courts "may" confer federal jurisdiction, but only if some other conditions were established.  The Court was identifying "language necessary *and sufficient* to confer jurisdiction" in a federal corporate charter, 505 U.S. at 252 (emphasis added).  That is why the Court stated that a federal corporate charter confers jurisdiction "*if, but only if*, it specifically mentions the federal courts."  505 U.S. at 255 (emphasis added).

Moreover, Judge Walton's focus on that sentence in *Red Cross* overlooked the numerous other cases establishing and relying upon the rule that a federal corporate charter specifically mentioning the federal courts confers federal jurisdiction.  As *Red Cross* explained, the Court established that principle long ago in several other cases.  *See* 505 U.S. at 252-57 & nn.5-9.  The

Court in *Red Cross* surely did not intend the sentence quoted by Judge Walton to cast aside the rule crafted by Chief Justice Marshall in 1809 and repeatedly reaffirmed since. Instead, as the Court made clear four pages later, *Red Cross* held that "[i]n expressly authorizing the" Red Cross "to sue or be sued in the federal courts" the Red Cross's charter "*suffic[ed]* to confer federal jurisdiction." 505 U.S. at 257 (emphasis added).

### C.    There Is No Meaningful Difference Between The Red Cross Charter And Fannie Mae's Charter.

Judge Walton also pointed to what he perceived to be a significant difference between the *Red Cross* charter and the Fannie Mae charter. "While the Red Cross charter authorizes suit 'in courts of law and equity, State or Federal, within the jurisdiction of the United States,'" Judge Walton contended, "Section 1723a(a) allows Fannie Mae 'to sue or be sued, and to complain or defend, in any court *of competent jurisdiction*, State or Federal.'" 457 F. Supp. 2d at 44 (emphasis in original). Judge Walton thought that distinction "significant" because "[t]o accept Fannie Mae's argument that Section 1723a(a) provides a blanket grant of jurisdiction . . . is to read the term 'of competent jurisdiction' entirely out of that 'sue and be sued' clause," making that language superfluous. *Id.* In sum, Judge Walton read the term "of competent jurisdiction" in Fannie Mae's corporate charter to require "an independent basis for federal jurisdiction." *Id.*

Again, KPMG does not agree. Even accepting Judge Walton's doubtful premise that the language of Fannie Mae's charter is significantly different from the Red Cross's charter, Judge Walton's reasoning is premised entirely on his unduly narrow reading of *Red Cross* and the centuries of cases on which *Red Cross* relied. Under the rule established in those cases, however, a specific reference to the federal courts in a federal corporate charter is sufficient to confer jurisdiction. That is so because under *Red Cross* a specific reference to the federal courts is a drafting convention putting Congress on "prospective notice" that such language confers jurisdiction in a federal corporate charter. 505 U.S. at 252.

23

Congress enacted Fannie Mae's charter against the background of that convention. The Housing Act of 1954 enacted the current language of Fannie Mae's charter little more than a decade after the Supreme Court in 1942 reaffirmed that a specific reference to the federal courts suffices to create federal jurisdiction. *See Red Cross*, 505 U.S. at 257 (reading *D'Oench, Duhem & Co. v. FDIC*, 315 U.S. 447 (1942) to follow the clear statement rule established in *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809) and in *Osborn v. Bank of United States*, 22 U.S. (9 Wheat) 738 (1824)). Congress is presumed to be aware of "settled judicial and administrative interpretation[s]" of statutes, *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2706 (2005), and that includes the rule that a federal corporate charter confers jurisdiction "if, but only if, it specifically mentions the federal courts," *Red Cross*, 505 U.S. at 255. Giving decisive weight to the purportedly "superfluous" language that Judge Walton saw elsewhere in Fannie Mae's charter would drain of significance the drafting convention *Red Cross* created, and would upset the settled expectations of the 83d Congress, which presumably relied on the *Red Cross* rule in crafting the language of Fannie Mae's charter.

In any event, Judge Walton was incorrect that the "court of competent jurisdiction" language in Fannie Mae's corporate charter is superfluous under KPMG's (and Fannie Mae's) reading of Fannie Mae's charter. Even if Fannie Mae's charter confers subject-matter jurisdiction, the phrase "court of competent jurisdiction" could well speak of ***other types*** of "jurisdiction" besides ***subject-matter*** "jurisdiction." "'Jurisdiction' . . . 'is a word of many . . . meanings.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). "Competent jurisdiction" could, for example, simply refer to whether the court has personal jurisdiction, whether the action before the court is not barred by sovereign immunity, or, indeed, whether the parties have satisfied any number of "necessary," threshold "conditions" to obtaining relief. *Vanness*, 85

F.3d at 663 n.2 (noting that many courts describe as jurisdictional "necessary conditions" to imposing an enhanced criminal sentence); *see also, e.g.*, *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (noting that the Court has described a time limit in the Federal Rules of Criminal Procedure as "jurisdictional").  Even if Fannie Mae's charter confers subject-matter jurisdiction, then, the phrase "court of competent jurisdiction" could refer to any number of other threshold requirements termed "jurisdictional" as well.  It is not superfluous.

Judge Walton also relied on the Supreme Court's decision in *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003) in support of his conclusion that Fannie Mae's charter does not create federal subject-matter jurisdiction.  457 F. Supp. 2d at 45 n.3.  But *Breuer* supports the opposite conclusion.  That case, as described above, construed a federal statute providing that actions under the Fair Labor Standards Act "may be maintained . . . in any Federal or state court of competent jurisdiction."  538 U.S. at 694 (citing 29 U.S.C. § 216(b)).  As Fannie Mae correctly notes in its motion, Remand Mtn. at 5 n.3, *Breuer* held that "[t]here [was] no question that Breuer could have begun his action in the District Court" in light of the reference to the federal courts.  *Id.*  *Breuer* therefore ruled that a federal statute permitting a party to sue in any federal court "of competent jurisdiction" ***conferred*** federal subject-matter jurisdiction.  Of course, as Judge Walton recognized, 457 F. Supp. 2d at 45 n.3, *Breuer* also stated that ***other*** jurisdictional provisions "in any event" conferred original jurisdiction over the case.  But the fact that the Supreme Court held that ***other provisions also*** supported federal jurisdiction in that case does not change the fact that the Court held the reference to federal courts in § 219(b) to create

jurisdiction *as well*.[7] *Breuer* therefore only confirms that Fannie Mae's charter creates federal jurisdiction.

Finally, Judge Walton argued that "[i]f the Court were to . . . hold that the phrase 'any court of competent jurisdiction, State or federal' authorized suit in *any* state or federal court, whether or not an independent basis for jurisdiction existed, such a result would be "grievously out of step with [a] myriad [of] other statutes, none of which have been interpreted with such staggering breadth." 457 F. Supp. 2d at 45. But Judge Walton cited only two statutes as evidence of that assertion, neither of which supports his statement. Judge Walton first cited a statute granting the Secretary of Housing and Urban Development the ability to sue "in any court of competent jurisdiction, state or federal." 457 F. Supp. 2d at 46. But "[t]he Court's holding in *Red Cross* applies specifically to 'sue and be sued' provisions in charters for federally-chartered corporations." *K.V. Mart v. United Food & Commercial Workers Int'l Union,* 173 F.3d 1221, 1224 (9th Cir. 1999) (per curiam) (holding that *Red Cross* clear statement rule applies only to federally chartered corporations); *see also Red Cross*, 505 U.S. at 255 (applying the clear statement rule to "congressional charters"). *Red Cross* thus does not necessarily require reading *any* statute in *any* context containing the phrase "court of competent jurisdiction, State or

---

[7]  KPMG invites the Court to consult the full text of paragraph in question:

> There is no question that Breuer could have begun his action in the District Court. The FLSA provides that an action 'may be maintained . . . in any Federal or State court of competent jurisdiction,' 29 U.S.C. § 216(b), and the district courts would in any event have original jurisdiction over FLSA claims under 28 U.S.C. § 1331, as 'arising under the Constitution, laws, or treaties of the United States," and § 1337(a) as 'arising under any Act of Congress regulating commerce." Removal of FLSA actions is thus prohibited under § 1441(a) only if Congress expressly provided as much.

*Breuer*, 538 U.S. at 694.

Federal" to create federal subject-matter jurisdiction.  And the only other statute Judge Walton cited was the provision of the FLSA that *Breuer* held ***did*** confer federal subject-matter jurisdiction.  *See* 457 F. Supp. 2d at 45 n.3.  Reading the materially identical language in the Fannie Mae charter also to create federal subject-matter jurisdiction is therefore not "grievously out of step" with the FLSA.  457 F. Supp. 2d at 45.

Then-Judge Hogan's opinion in *Optiperu, S.A. v. Overseas Private Investment Corp.*, 640 F. Supp. 420 (D.D.C. 1986) also casts doubt on Judge Walton's reading of the "court of competent jurisdiction" phrase in Fannie Mae's charter.  The question in that case was whether the Overseas Private Investment Corporation's (OPIC) charter conferred subject-matter jurisdiction on the federal courts.  In addressing that question, Judge Hogan approvingly cited a decision of the Fourth Circuit holding that an authorization to the Secretary of Housing and Urban Development "to sue and be sued in any court of competent jurisdiction, State or Federal"—the provision cited by Judge Walton—***conferred*** subject-matter jurisdiction on the federal courts.  *Id.* at 421.  Although Judge Hogan ruled that the OPIC's charter did not confer jurisdiction, he did so only because that charter—unlike Fannie Mae's charter—"fail[ed] to prescribe that suits brought by or against OPIC may be brought 'in any court of competent jurisdiction, State or Federal.'"  *Id.*  Judge Hogan therefore recognized and applied the same rule that Judge Walton rejected:  the phrase "any court of competent jurisdiction, State or Federal" in a federal corporate charter is sufficient to confer federal jurisdiction.  Judge Walton did not cite Judge Hogan's opinion.

27

**CONCLUSION**

For the forgoing reasons, Fannie Mae's motion to remand should be denied.  A proposed order is attached.

Dated: January 25, 2007

Respectfully submitted,

/s/ Andrew S. Tulumello
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused copies of the foregoing to be transmitted on January 25,

2007, to the following counsel registered to receive electronic service:


Jerome L. Epstein
Jenner & Block LLP
601 13th Street, N.W.
Washington, D.C. 20005
*Counsel for Fannie Mae*

/s/ Henry C. Whitaker
Henry C. Whitaker

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FANNIE MAE,

         *Plaintiff*,

v.

KPMG LLP,

         *Defendant*.

No. 1:06-cv-02111 (RJL)

**[PROPOSED] ORDER DENYING
FANNIE MAE'S MOTION TO REMAND**

    Fannie Mae's motion to remand this case to the Superior Court of the District of

Columbia is denied.

    Dated:

_____
Richard J. Leon, U.S. District Judge