IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FANNIE MAE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:06CV02111 (RJL) |
| | ) |
| KPMG LLP, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF FANNIE MAE'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO REMAND TO THE
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

Plaintiff Fannie Mae respectfully submits this reply memorandum in support of its motion to remand its individual malpractice action against KPMG LLP to D.C. Superior Court.

**INTRODUCTION**

KPMG does not dispute that, had it been sued under state law by virtually any other corporation for malpractice and breach of contract, KPMG could not have removed the case to federal court. Thus, KPMG is forced to contend that Congress's intent when enacting Fannie Mae's Charter Act was to disadvantage Fannie Mae and grant special privileges to parties it sues. But the Charter Act confers numerous powers and benefits on Fannie Mae, a corporation that Congress created to advance the important national mission of promoting homeownership. In light of those powers and benefits, there is no basis for reading the Charter Act's sue-and-be-sued clause to impose unique burdens on Fannie Mae – and to grant special advantages to its accountants.

KPMG claims support for its unprecedented interpretation of the Charter Act in cases interpreting the identically worded jurisdictional provision relating to the Secretary of Housing

1

and Urban Development. KPMG states that "courts have held" that the provision "does not prohibit the removal of a suit *brought by the Secretary* from state court to federal court." KPMG Opp. 9 (emphasis added). But the cases KPMG cites do not hold that a suit "brought by the Secretary" can be removed; indeed, they do not involve suits "brought by the Secretary" at all. Instead, each case involves removal *by the Secretary* of a suit *brought by a private party* in state court *against* the Secretary – and thus, each addresses the propriety of removal by the Secretary (the analog to removal by Fannie Mae), not removal by a private party such as KPMG. KPMG thus flatly misrepresents these cases; they provide no support for its argument whatsoever. KPMG thus can point to *no case* allowing a private party to invoke the Charter Act to remove an action from state court where (as here) Fannie Mae is the plaintiff.

KPMG also devotes substantial space in its opposition to questioning Fannie Mae's motives in filing a stand-alone state-law suit in D.C. Superior Court, suggesting that somehow Fannie Mae seeks to avoid adverse precedent. KPMG Opp. 15. But as KPMG surely knows, Fannie Mae's claims will be governed by D.C. law whether they are litigated in Superior Court or in this Court. In the securities action, moreover, KPMG chided the opt-out plaintiffs for *not* pursuing the course of action that Fannie Mae has pursued here. Specifically, KPMG argued that "[i]f plaintiffs truly wished to litigate separately they could have filed [a] purely state-law based action in a state court." KPMG Reply in Support of Mot. to Dismiss Claims of Opt-Out Pls., *In re Fannie Mae Securities Litig.*, No. 1:04-cv-1639 (D.D.C. filed Oct. 27 (2006)) at 23. In any event, KPMG is wrong to say that "[o]ne can only speculate," KPMG Opp. 2, why Fannie Mae wants to be in D.C Superior Court. Fannie Mae stated plainly in its motion to remand that it does not want its straightforward state-law malpractice action to be lost amid the complexity of the massive securities class action. Fannie Mae Mot. to Remand 7. Fannie Mae's malpractice

2

case does not involve claims of fraud, proof of scienter, issues of investors' alleged reliance, the purchase or sale of securities, the effect of published statements on investors, or numerous other securities class action issues. In characterizing this suit as just another aspect of the securities litigation, KPMG seeks to bury Fannie Mae's discrete claims of negligence and breach of contract under an avalanche of disparate facts and irrelevant legal issues.

KPMG's gambits should not distract this Court. The critical question is what Congress intended by the language in the Charter Act, not what Congress intended in myriad other statutes. In answering that question, and despite taking some 30 pages to respond to Fannie Mae's 10-page motion, KPMG conspicuously ignores the textual provisions of the Charter Act in which Congress conferred a host of benefits and advantages on Fannie Mae to advance Fannie Mae's critical national mission of expanding home ownership. As the D.C. Circuit has observed, "textual analysis is a language game played on a field known as 'context,'" *Bell Atlantic Telephone Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997), and these textual provisions provide the critical context for interpreting the removal rights created by the Charter Act. Against this backdrop of provisions that are plainly designed to *protect* Fannie Mae, the Charter Act is not plausibly interpreted as designed to give defendants such as KPMG "*the same rights as Fannie Mae has*," KPMG Opp. 14 (emphasis in original), much less to single out Fannie Mae for adverse treatment.

Fannie Mae's Motion to Remand should be granted.

## DISCUSSION

KPMG's Opposition centers on the proposition that the Charter Act was intended to provide KPMG "the same rights as Fannie Mae has," KPMG Opp. 14 (emphasis omitted), and to impose a unique disadvantage on Fannie Mae. The Charter Act cannot be so read.

**I.       No Case Has Ever Permitted A Private Party To Invoke The Charter Act As A Basis For Removal.**

No case has permitted a private party to invoke the Charter Act to remove a state law action filed by Fannie Mae or any similarly situated federally chartered corporation. In an effort to suggest otherwise, KPMG cites cases interpreting the predecessor of 12 U.S.C. § 1702, which, using language identical to that of § 1723a, authorizes the Secretary of Housing and Urban Development to "sue and be sued in any court of competent jurisdiction, State or Federal." *See* KPMG Opp. 9. KMPG asserts that in these cases the "courts have held" that this language "does not prohibit the removal of a suit *brought by the Secretary* from state court to federal court." *Id.* (emphasis added; citing *Sarner v. Mason*, 228 F.2d 176 (3d Cir. 1955); and *James River Apartments, Inc. v. Fed. Hous. Admin.*, 136 F. Supp. 24 (D. Md. 1955)). But that assertion is wrong. Neither *Sarner* nor *James River* even *addressed* a claim involving "removal of a suit brought by the Secretary." To the contrary, both of these cases involved suits brought in state court *against* the Secretary (or, more precisely, against the Commissioner of the Federal Housing Administration, the Secretary's forerunner). *See Sarner*, 228 F.2d at 178-79 (private plaintiffs sought "to enjoin the Commissioner" and "[t]he Commissioner and the other defendants removed the case to the court below"); *James River*, 136 F. Supp. at 25-27 (private plaintiff sought "a declaratory judgment . . . [against] the Federal Housing Administration" and "[t]he case was removed by the defendant [Federal Housing Administration] to this court").

Still, KPMG quotes *Sarner* as holding that the language of § 1702's predecessor "was not intended to affect and did not affect the right of removal." KPMG Opp. 9 (quoting *Sarner*, 228 F.2d at 179). KPMG inexcusably truncates this quotation to change its meaning. *Sarner* actually stated that the language of § 1702 "was not intended to affect and did not affect the right of removal *inhering in the Commissioner* under the removal statute." *Sarner*, 228 F.2d at 179

4

(emphasis added). Needless to say, the omitted language makes all the difference. In short, KPMG flatly mischaracterizes both *Sarner* and *James River*. Those cases in fact confirm what Fannie Mae has contended (and what KPMG does not dispute): namely, that Fannie Mae may invoke the Charter Act as a basis for removal when it is sued in state court. Contrary to KPMG's assertion, the cases do not "hold" that a private plaintiff may invoke the Charter Act as a basis for removal when Fannie Mae has sued in state court.

Nor does KPMG's list of cases that purportedly have "routinely rejected Fannie Mae's argument," KPMG Opp. 8, help KPMG's cause. Those cases all involve generally applicable statutes – the Clean Water Act, the Fair Credit Reporting Act, and the Agricultural Adjustment Act – rather than corporate charters; indeed, not a single one involves a federally chartered corporation or any entity remotely comparable to Fannie Mae. *See* KPMG Opp. 8. Moreover, none of those cases involves a sue-and-be-sued clause at all, much less a provision that bestows the "power to sue."

Thus, despite KPMG's protestations to the contrary, permitting removal here would be unprecedented.

## II. Congress Did Not Intend The Charter Act To Permit Private Parties To Remove Any Case Involving Fannie Mae.

To answer the critical question of statutory interpretation presented by this motion, KPMG's approach is to ignore the bulk of the text of the Charter Act. Thus, for example, KPMG ignores the provisions – highlighted in Fannie Mae's Opening brief – that provide Fannie Mae with immunity from state taxation, eliminate state incorporation requirements, and even allow Fannie Mae to benefit from the Treasury's authority to buy and sell $2.25 billion of Fannie Mae obligations. *See* Fannie Mae Mot. to Remand 6 (describing these provisions). KPMG

5

likewise ignores the provisions of the Act that highlight the importance of Fannie Mae's national mission.  *See* 12 U.S.C. § 1716.

KPMG's approach ignores that a statute's meaning must be determined by consulting all of its provisions, not just isolated ones plucked out of context.  *See. e.g.*, *Lopez v. Gonzales*, 127 S. Ct. 625, 631 (2006) (noting "the cardinal rule that statutory language must be read in context" (quoting *General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004))); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Bell Atl. Tel. Cos.*, 131 F.3d at 1047.  Here, other provisions of the Charter Act give context to the sue-and-be-sued provision and thus explain what Congress was trying to accomplish.  In particular, those provisions make clear that Congress sought to *protect* Fannie Mae's pursuit of its mission, which Congress found to be of national importance.  Against the backdrop of these textual protections, KPMG's reading of the Act as an attempt by Congress to impose a unique burden on Fannie Mae is implausible.  *See, e.g.*, *In re Meyerland Co.*, 960 F.2d 512, 519-20 (5th Cir. 1992) (en banc) (stating that the conclusion that 12 U.S.C. § 1819 allows the FDIC to remove a case even when it is on appeal "is completely consistent with the other procedural advantages FIRREA gives the FDIC"); *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1213 (9th Cir. 1994) (stating that "the purposes behind the statutory scheme, as expressed in the legislative history and evidenced by the other procedural advantages given to the RTC[,] militate in favor of resolving any ambiguity in favor of permitting the RTC access to the federal courts").

More specifically, these Charter Act provisions refute KPMG's argument that Congress intended to give it (and other defendants) the "*same rights as Fannie Mae has*."  KPMG Opp. 14

(emphasis in original).  The Charter Act extends a host of benefits and advantages to Fannie Mae, such as the tax immunity, the exemption from state incorporation requirements, and the Treasury debt purchase authority described above.  Those advantages, simply put, were not created for the benefit of KPMG.  And that is to be expected, for Congress created Fannie Mae to advance a specific national mission of expanding home ownership, and Congress specifically identified that mission as a "national goal."  Housing & Urban Development Act of 1968, Pub. L. No. 90-448, § 2, 82 Stat. 476, *reprinted in* 1968 U.S.C.C.A.N. 547, 547.  Congress plainly did not seek in the Act to give KPMG the "same rights as Fannie Mae has."  *See Meyerland*, 960 F.2d at 519-20; *Resolution Trust Corp.*, 42 F.3d at 1213.

KPMG is also wrong to disparage Fannie Mae's argument as one invoking the "purpose" of the Charter Act to "override the plain text of the charter."  KPMG Opp. 10.  To the contrary, Fannie Mae's argument relies squarely on the Act's text, using the textual protections in certain parts of the Act to illuminate the textual protections elsewhere in the Act.  As the D.C. Circuit and the Supreme Court have made clear, that is the preferred approach to statutory interpretation.  *See, e.g.*, *Lopez*, 127 S. Ct. at 631; *Davis*, 489 U.S. at 809; *Bell Atl. Tel. Cos.*, 131 F.3d at 1047.

KPMG turns next to the argument that the Charter Act is insufficiently clear in precluding removal by KPMG to satisfy the requirements of Section 1441(a).  *See* 28 U.S.C. § 1441(a); *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003); KPMG Opp. 3.  But contrary to KPMG's contentions, *see* KPMG Opp. 7-8, Section 1441's use of the phrase "expressly provided" does not require the incantation of any particular magic words by Congress.  The Supreme Court certainly did not hold as much in *Breuer*.  Indeed, the Supreme Court has held that, to satisfy the "except as expressly authorized" requirement of the Anti-Injunction Act, the test is merely "whether an Act of Congress, clearly creating a federal right or

7

remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). To that end, "no prescribed formula is required," nor must there be an express reference to the Anti-Injunction Act. *Id.* at 237 (quoting *Amalgamated Clothing Workers of America v. Richman Bros. Co.*, 348 U.S. 511, 516 (1955)).

In a variety of other contexts, the courts of appeals – including the D.C. Circuit – have reached similar conclusions. *See Gaddis v. United States*, 381 F.3d 444, 452, 454 (5th Cir. 2004) (en banc) (noting that Fed. R. Civ. P. 17(c) "constitutes the [required] express statutory authorization . . . to provide district courts with the inherent power and discretion to tax [certain] fees as costs against the nonprevailing party," even though the rule "does not specifically state that district courts may tax [such] fees as costs"); *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003) (waiver of immunity from prejudgment attachment can be "explicit" without mentioning "prejudgment attachment"; all that is required is unambiguous demonstration of the intent to waive that immunity); *United States v. Figueroa*, 105 F.3d 874, 877 (3d Cir. 1997) (defining "express" to mean "clear" in context of Sentencing Guidelines enhancement for express death threat); *United States v. Robinson*, 86 F.3d 1197, 1200 (D.C. Cir. 1996) (noting, in context of Sentencing Guidelines enhancement for express death threat, that "express" may "simply mean 'clear'" (citing *Black's Law Dictionary* 580 (6th ed. 1990) and *Webster's Third New International Dictionary* 803 (1993))). So, too, here: Fannie Mae's Charter Act need not recite the word "removal" in order to "expressly provide[]" for an exception to § 1441.

Similarly unpersuasive is KPMG's suggestion that certain other statutory provisions provide examples of "express" preclusion of removal. KPMG Opp. 9-10. The specificity of

these provisions, while plainly sufficient to satisfy the requirements of the statute, is by no means necessary. As cases such as *Mitchum* make clear, there are ample avenues for Congress to make its intentions clear. Moreover, KPMG's argument cuts both ways. Just as Congress knew how to make clear that *no* party can remove, it also knew how to make clear that *any* party can remove. *See, e.g.*, 12 U.S.C. § 632 (noting, with respect to suits to which federally chartered corporations are parties and that involve certain banking operations, that "*any defendant* in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States" (emphasis added)). Congress could easily have specified, as in § 632, that "any defendant" in a suit involving Fannie Mae can remove – but Congress did not do so.

Leaving the text behind, KPMG next suggests (KPMG Opp. 14) that this Court should be troubled by the asymmetry under Fannie Mae's argument between the removal rights available to Fannie Mae and the removal rights available to those who litigate against it. *See* Fannie Mae Mot. to Remand 6. But such asymmetries are a routine part of removal jurisprudence. In the context of diversity jurisdiction, if a New York citizen sues a California citizen in New York state court, the California citizen can remove. But if the California citizen sues the New York citizen in that same New York state court, the New York citizen cannot remove; and that is so even though there would have been jurisdiction had the California citizen sued initially in federal court. 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3723, at 564-68 (3d ed. 1998). The law here, by virtue of the Charter Act, is analogous: Fannie Mae could have removed had KPMG sued it in D.C. Superior Court, but KPMG cannot invoke Fannie Mae's Charter Act to remove where Fannie Mae has chosen that court as the forum for its state law claims.

9

Finally, KPMG advances a hodgepodge of other arguments that merit only brief comment. First, KPMG suggests that Fannie Mae's advocacy here is inconsistent with its advocacy elsewhere. One would think that that argument – the lead argument in KPMG's brief – would contain some clear inconsistency on the part of Fannie Mae. Yet KPMG has identified none. KPMG cannot point to any instance in which Fannie Mae has suggested that a party it has sued in state court could remove the case to federal court.

Instead, KPMG fills its opposition with excerpts and quotations from briefs where Fannie Mae has argued that it can invoke federal court jurisdiction. For example, KPMG reprints verbatim three paragraphs from another Fannie Mae filing that, according to KPMG, are "contrary to [Fannie Mae's] current position." KPMG Opp. 5 n.2. Those paragraphs, however, argued only that "Congress's decision to permit *Fannie Mae* to invoke the protections of a federal forum is sensible" and that "*Fannie Mae* has routinely sought and been afforded the protections of a federal forum." *Id.* (emphasis added). That is entirely consistent with Fannie Mae's position here, so it is puzzling that KPMG believes it has found a contradiction.

Nor are the other statements plucked out of context from other Fannie Mae briefs inconsistent with Fannie Mae's current position. One of those statements, as KPMG observes, noted "Congress's intent to confer original federal court jurisdiction over cases in which Fannie Mae is a party." *Id.* at 4 (quoting Mem. in Opp. to Pls.' Mot. to Remand 3, *Knuckles v. RBMG, Inc.*, No. 2:03-cv-02414 (S.D. W. Va. filed Jan. 23, 2004)). Yet *Knuckles* did not involve a defendant's attempt to remove over Fannie Mae's objection; rather, it (like the other case KPMG cites) involved removal by Fannie Mae itself. Nor, as the quoted language makes clear, did Fannie Mae's "sweeping" statement, KPMG Opp. 4, even address removal jurisdiction. Instead, it addressed only original jurisdiction, which is uncontested here.

KPMG next downplays the practical consequences of permitting removal in this case, contending that "Fannie Mae's charter has been in force since the Housing Act of 1954, yet no 'flood' of removed actions originally filed by Fannie Mae has materialized." KPMG Opp. 13 (citation omitted). There has been no flood – not even a trickle – because *no court has ever permitted* a private party to invoke Fannie Mae's Charter Act to justify removal. It is only if KPMG were to prevail here, and thereby bring about a substantial change in governing law, that such a flood is possible. Fannie Mae litigates *thousands* of suits – evictions, foreclosures, quiet title actions – in state court each year. The federal courts should be hesitant to hold – and to attribute to Congress an intent to hold – that private parties in all of those cases could invoke Fannie Mae's Charter Act to remove these cases to federal court.

Finally, KPMG invokes Fannie Mae's prior references to "the nationwide uniformity and sensitivity to federal issues that comes with federal court jurisdiction" in support of permitting removal here. KPMG Opp. 12-13 (quoting Opp. to Remand, *Knuckles*, *supra*). But KPMG's argument would make sense only if the Charter Act rendered federal jurisdiction exclusive. That is clearly not the case: no one questions state courts' authority to hear the raft of state-court cases that Fannie Mae routinely files. The only question, then, is whether Congress intended the choice of forum to reside with Fannie Mae, or with its adversaries. It is surely more plausible that Congress, when it passed Fannie Mae's Charter Act, trusted Fannie Mae, not KPMG, to determine whether invocation of a federal forum is appropriate.

## CONCLUSION

Fannie Mae's motion to remand this action to D.C. Superior Court should be granted.

11

Respectfully submitted.

_____/s/_____

JENNER & BLOCK LLP

Jerome L. Epstein (DC Bar #412824)
Ian Heath Gershengorn (DC Bar #448475)
Jenner & Block LLP
601 13th Street, N.W.
Suite 1200
Washington, D.C. 20005
202-639-6062 (voice)
202-639-6066 (fax)
jepstein@jenner.com

Ronald L. Marmer
C. John Koch
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL  60611-7603
312-222-9350