## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FANNIE MAE,

*Plaintiff*,

v.

KPMG LLP,

*Defendant*.

No. 1:06-cv-02111 (RJL)

## REPLY MEMORANDUM OF DEFENDANT KPMG LLP IN FURTHER SUPPORT OF MOTION TO DISMISS FANNIE MAE'S COMPLAINT

F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar No. 468351)
Claudia M. Osorio (D.C. Bar No. 477594)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendant KPMG LLP*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     Fannie Mae's Professional Negligence Claim Against KPMG Is Barred
       By The Doctrines Of Contributory Negligence And *In Pari Delicto*. ................... 2

       A.     The District Of Columbia Does Not Recognize A "Professional
              Negligence" Exception To The Doctrine Of Contributory
              Negligence. .............................................................................................. 2

       B.     Fannie Mae's Claim Is Barred By The Doctrine Of *In Pari
              Delicto*. .................................................................................................... 11

II.    There Is No Reason To Postpone Dismissal Of The Complaint. ........................ 12

       A.     Fannie Mae's Contributory Fault Is Apparent On The Face Of Its
              Complaint. ............................................................................................... 12

       B.     Fannie Mae Is Estopped From Denying The Rudman Report And
              Its Admissions In Its SEC Filings. .......................................................... 15

              1.     Judicial Estoppel Applies To Statements Made Outside
                     Of A Court Proceeding. ............................................................... 16

              2.     Fannie Mae Is Estopped From Denying The Interim And
                     Final OFHEO Reports. ................................................................. 18

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Am. Nat'l Bank v. FDIC*,
710 F.2d 1528 (11th Cir. 1983) ................................................................ 18

*Baena v. KPMG LLP*,
453 F.3d 1 (1st Cir. 2006) ...................................................................... 11

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
No. 93cv5298, 1996 WL 728356 (S.D.N.Y. Dec. 18, 1996) .................... 4

*Bd. of Trustees v. Coopers & Lybrand*,
803 N.E.2d 460 (Ill. 2003) ...................................................................... 4

*Bell v. Jones*,
523 A.2d 982 (D.C. 1986) ........................................................................ 2

*Brown v. Slenker*,
220 F.3d 411 (5th Cir. 2000) .................................................................. 4

*Carnegie Int'l Corp. v. Grant Thornton, LLP*,
No. 24-C-00-002639, 2005 WL 851064 (Md. Cir. Ct. Apr. 6, 2005) ........ 6

*Cenco, Inc. v. Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) .................................................................. 5

*Chang v. Michiana Telecasting Corp.*,
900 F.2d 1085 (7th Cir. 1990) ................................................................ 11

*Chaveriat v. Williams Pipe Line Co.*,
11 F.3d 1420 (7th Cir. 1993) .................................................................. 17

*Consol. R. Corp. v. Allied Corp.*,
692 F. Supp. 924 (D. Ind. 1988), *aff'd*, 882 F.2d 254 (7th Cir. 1989) .................... 12

*Craig v. Anyon*,
212 A.D. 55 (App. Div. 1925), *aff'd mem.*, 152 N.E. 431 (1926) ............................ 4

*Cumis Ins. Soc'y v. Tooke*,
739 N.Y.S. 2d 489 (App. Div. 2002) ........................................................ 9

*D.C. Transit Sys., Inc. v. Garman*,
301 F.2d 568 (D.C. Cir. 1962) ................................................................ 11

*Dapremont v. Overcash, Walker & Co.*,
No. 99-0353-BH-M, 2000 U.S. Dist. LEXIS 15228 (S.D. Ala. 2000) ...................... 5

*Davies v. Mann*,
10 M. & W. 546, 152 Eng. Rep. 588 (1842) ............................................ 7

*Delmar Vineyard v. B. A. Timmons*,
486 S.W.2d 914 (Tenn. Ct. App. 1972) .................................................... 5

*Dist. of Columbia v. Mitchell*,
533 A.2d 629 (D.C. 1987) ........................................................................ 8

**Table of Authorities**
**(Continued)**

*Douglas v. Lyles,*
  841 A.2d 1 (D.C. 2004) ............................................................................ 6

*Durphy v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.,*
  698 A.2d 459 (D.C. 1997) ........................................................................ 7

*E.F. Hutton Mortgage Corp. v. Pappas,*
  690 F. Supp. 1465 (D. Md. 1988) ............................................................ 6

*E.F.W. v. St. Stephen's Indian High School,*
  264 F.3d 1297 (10th Cir. 2001) ............................................................ 13

*Forrest v. Verizon Commc'ns, Inc.,*
  805 A.2d 1007 (D.C. 2002) ...................................................................... 6

*Fullmer v. Wohfeiler & Beck,*
  905 F.2d 1394 (10th Cir. 1990) .............................................................. 4

*Hall v. Carter,*
  825 A.2d 954 (D.C. 2003) ................................................................ 2, 11

*Hewlette v. Hovis,*
  318 F. Supp. 2d 332 (E.D. Va. 2004) ...................................................... 5

*Hunt v. Miller,*
  *Hunt v. Miller,* 908 F.2d 1210 (4th Cir. 1990) ...................................... 4

*In re Cleo Belmar,*
  319 B.R. 748 (D.D.C. 2004) ...................................................................... 2

*In re Greater Se. Cmty. Hosp.,*
  353 B.R. 324 (Bankr. D.D.C. 2006) ...................................................... 14

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941) .................................................................................. 3

*Lewis v. Atlas Corp.,*
  158 F.2d 599 (3d Cir. 1946) ............................................................ 17, 18

*Lincoln Grain, Inc. v. Coopers & Lybrand,*
  345 N.W.2d 300 (Neb. 1984) .................................................................. 4

*Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.,*
  457 S.E.2d 28 (Va. 1995) .......................................................................... 5

*Mangold v. Cal. Pub. Utils. Comm'n,*
  67 F.3d 1470 (9th Cir. 1995) .................................................................... 3

*Miller v. Ernst & Young,*
  938 S.W.2d 313 (Mo. Ct. App. 1997) ...................................................... 5

*Musler v. Georgeff,*
  233 F. Supp. 2d 727 (D. Md. 2002) ...................................................... 17

## Table of Authorities
### (Continued)

*Nat'l Sur. Corp. v. Lybrand*,
  9 N.Y.S.2d 554 (App. Div. 1939) ............................................................................ 3

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...................................................................................... 17

*Ott v. Smith*,
  413 So. 2d 1129 (Ala. 1982) ............................................................................ 5

*Pack v. Doe*,
  347 S.E.2d 22 (Va. 1988) ................................................................................ 7

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ................................................................................ 11, 12

*Scoggins v. Jude*,
  419 A.2d 999 (D.C. 1980) ............................................................................... 8

*Seidman & Seidman v. Gee*,
  625 So. 2d 1 (Fla. Ct. App. 1992) ..................................................................... 5

*Shapiro v. Glekel*,
  380 F. Supp. 1053 (S.D.N.Y. 1974) .................................................................. 4

*Simon v. Safelite Glass Corp.*,
  128 F.3d 68 (2d Cir. 1997) ............................................................................ 17

*Somma v. Gracey*,
  544 A.2d 668 (Conn. Super. Ct. 1988) ............................................................ 4

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ......................................................................... 13

*Standard Brands, Inc. v. Bateman*,
  184 F.2d 1002 (8th Cir. 1950) ....................................................................... 12

*Stratton v. Sacks*,
  99 B.R. 686 (D. Md. 1989), *aff'd*, 900 F.2d 255 (4th Cir. 1990) ..................... 6

*Stroud v. Arthur Andersen & Co.*,
  73 P.3d 783 (Okl. 2001) .................................................................................. 4

*Waldman v. Levine*,
  544 A.2d 683 (D.C. 1988) ............................................................................... 2

*Wegad v. Howard St. Jewelers, Inc.*,
  605 A.2d 123 (Md. 1992) ................................................................................ 6

*Westbrook v. Wash. Gas & Light Co.*,
  748 A.2d 437 (D.C. 2000) ............................................................................... 7

*Williams Ford, Inc. v. Hartford Courant Co.*,
  657 A.2d 212 (Conn. 1995) ............................................................................. 4

**Table of Authorities**
**(Continued)**

*WMATA v. Young*,
   731 A.2d 389 (D.C. 1999) ................................................................................. 4

*Wright v. Ore. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ......................................................................... 13

**Statutes**

18 U.S.C. § 1350 ................................................................................................. 18

N.Y. C.P.L.R. § 1411 ........................................................................................... 9

**Other Authorities**

Comm. on Capital Markets Regulation, *Interim Report of the Committee on
   Capital Markets Regulation* (Nov. 30, 2006) ................................................ 10

Fed. Nat'l Mortgage Ass'n, Annual Report (Form 10-K) (Dec. 6, 2006) .............. 18, 19

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts* (5th
   ed. 1984) ......................................................................................................... 7

Restatement (Third) of Agency § 5.03 (2006) ...................................................... 8

Restatement (Second) of Torts § 463 (1977) ......................................................... 8

Restatement (Third) of Torts § 7 (2000) ................................................................ 8

18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
   (2d ed. 2002) ................................................................................................... 19

**INTRODUCTION**

Fannie Mae's opposition brief is long on discussion of "common sense" and the "common law" of *other* jurisdictions, Fannie Mae Opp. at 3, but short on analysis of the law actually applicable in this case—the law of the District of Columbia. The question before this Court, however, is not what the law of the District of Columbia *ought* to be, but what it is. There is no dispute here that contributory negligence on the part of the plaintiff and the doctrine of *in pari delicto* absolutely bar recovery in the District of Columbia. Whatever the merits of those doctrines as a policy matter, they supply the rule of decision in this case, and they demand dismissal of Fannie Mae's complaint.

Fannie Mae's efforts to postpone the dismissal of this action also fail. The complaint itself amply shows that Fannie Mae is responsible for its restatement, regardless of any alleged negligence by KPMG. Indeed, that conclusion is not surprising. Fannie Mae's *own* investigation—the findings of which it expressly embraced and adopted—determined that Fannie Mae *intentionally* manipulated its accounting. The OFHEO investigation, cited by Fannie Mae in its complaint, also found that Fannie Mae had intentionally misled its auditor, KPMG. Further factual development will not alter what is evident even now: Fannie Mae's claim cannot succeed under the law of the District.

Because the contributory negligence and *in pari delicto* doctrines foreclose Fannie Mae from shifting the costs of its own wrongdoing to KPMG, KPMG's motion to dismiss should be granted.

**ARGUMENT**

I.    **Fannie Mae's Professional Negligence Claim Against KPMG Is Barred By The Doctrines Of Contributory Negligence And *In Pari Delicto*.**

    A.    **The District Of Columbia Does Not Recognize A "Professional Negligence" Exception To The Doctrine Of Contributory Negligence.**

Fannie Mae does not and cannot dispute that, under D.C. law, any negligence on the part of a plaintiff completely bars the plaintiff's claim. *See* KPMG Mem. at 10-11. Instead, Fannie Mae asks this Court to impose a "professional negligence" exception to the contributory negligence doctrine under D.C. law—specifically, an exception providing that "where a plaintiff hires a *professional* to detect and correct certain conditions, the plaintiff's negligence in creating those conditions [cannot] absolve[] the *professional* of responsibility for failing to perform[] the very duties he assumed." Fannie Mae Opp. at 18 (internal quotation marks and citation omitted; emphasis added).

Contrary to Fannie Mae's argument, there is no "professional negligence" exception to contributory negligence in the District of Columbia. Rather, the District's contributory negligence defense applies to professionals, including doctors, lawyers, and engineers, without special exception. *See, e.g*, *Hall v. Carter*, 825 A.2d 954, 961-62 (D.C. 2003) (ordering judgment to be entered for a doctor based on contributory negligence in a professional malpractice case); *In re Cleo Belmar*, 319 B.R. 748, 756-57 (D.D.C. 2004) (permitting defendant-attorney to assert a contributory negligence defense in view of record evidence showing that his client's own negligence contributed to the client's alleged damages); *Bell v. Jones*, 523 A.2d 982, 992-93 (D.C. 1986) (holding an engineer contributorily negligent in a professional negligence action). In the District of Columbia, the same negligence rules apply to professionals of all stripes. *See Bell*, 523 A.2d at 987 (when faced with a "case of first impression" involving an engineering malpractice claim, applying the same rules to that

profession derived "from [its] own cases involving other professions"); *Waldman v. Levine*, 544 A.2d 683, 688 (D.C. 1988) (refusing to fashion a special rule for attorney malpractice cases involving medical malpractice, because the standard of care applicable in professional negligence cases "is equally applicable to actions involving negligence by professionals, such as attorneys and physicians"). Fannie Mae's suggestion that this Court adopt a special negligence rule for professionals—or even accountants—therefore conflicts with well established District of Columbia law.

Fannie Mae contends that this Court should "project or predict" that the District of Columbia would abandon these precedents and adopt an exception to the contributory negligence doctrine for professionals. Fannie Mae Opp. at 16. But Fannie Mae cannot cite a single District of Columbia case that has adopted or even suggested such an exception. Instead, Fannie Mae relies virtually exclusively on a line of cases from other jurisdictions, beginning with *National Surety Corp. v. Lybrand*, 9 N.Y.S.2d 554 (App. Div. 1939). Fannie Mae Opp. at 12-16. *National Surety* was decided in 1939. Yet in the nearly **seventy** years since, the D.C. Court of Appeals has never cited that case, let alone adopted it. This Court should not, in favor of the jurisdictions that Fannie Mae prefers, override the established policies that prevail in the District of Columbia. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941) ("[T]he proper function of [a] federal court is to ascertain what state law is, not what it ought to be."); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995) ("The duty of the federal court is to ascertain and apply the existing [state] law, not to predict that [the state] may change its law." (internal quotations, alterations, and citation omitted)).

Fannie Mae also asserts that the "logic" of the *National Surety* line of cases from other jurisdictions is "unassailable" and is "the only sensible" rule. Fannie Mae Opp. at 16, 18. But

Fannie Mae principally relies on cases from jurisdictions that reject the contributory negligence
doctrine and thus are inconsistent with District of Columbia law.  Fannie Mae Opp. at 12-17
(relying on cases applying the laws of Illinois, Connecticut, Oklahoma, Utah, and Nebraska).[1]
Moreover, contrary to Fannie Mae's suggestion, Fannie Mae Opp. at 16, contributory negligence
jurisdictions **have** refused to follow that logic, and have ***not*** recognized a professional negligence
exception.[2]  Fannie Mae also neglects to mention that courts have recognized that any such
exception should not preclude contributory negligence as a complete defense unless an

---

[1]  *See Bd. of Trustees v. Coopers & Lybrand*, 803 N.E.2d 460, 466 (Ill. 2003) (noting that
Illinois is a comparative fault jurisdiction); *Williams Ford, Inc. v. Hartford Courant Co.*, 657
A.2d 212, 223 (Conn. 1995) (holding that Connecticut's comparative negligence statute
governs suits alleging commercial losses); *Somma v. Gracey*, 544 A.2d 668, 672 (Conn.
Super. Ct. 1988) (holding that comparative fault analysis applies to professional malpractice
claims); *Stroud v. Arthur Andersen & Co.*, 73 P.3d 783, 789-90 (Okl. 2001) (same as to
Oklahoma law); *Fullmer v. Wohfeiler & Beck*, 905 F.2d 1394, 1396 (10th Cir. 1990)
(applying Utah law, and noting same as to Utah law).  And *Lincoln Grain, Inc. v. Coopers &
Lybrand*, 345 N.W.2d 300 (Neb. 1984), as one of Fannie Mae's own authorities admits,
likewise "was decided in the context of comparative negligence principles."  *Fullmer*, 905
F.2d at 1398.

[2]  *See Brown v. Slenker*, 220 F.3d 411, 423 (5th Cir. 2000) ("In Virginia, contributory
negligence is a complete defense to a legal malpractice action."); *Hunt v. Miller*, 908 F.2d
1210, 1217 (4th Cir. 1990) ("Contributory negligence is a defense to professional negligence
under North Carolina law."); *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital
Corp.*, 457 S.E.2d 28, 32 (Va. 1995) ("[C]ontributory negligence is available as a defense in
a legal malpractice action."); *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 335 (E.D. Va. 2004)
("[T]he defense of contributory negligence [is] applicable to a contract action for legal
malpractice."); *Ott v. Smith*, 413 So. 2d 1129, 1135 (Ala. 1982) (applying contributory
negligence to legal malpractice cases because a lawyer renders "professional services"
similar to doctors, dentists, and other professions, and "any other rule would be grossly
unfair" (internal quotation marks omitted)); *Dapremont v. Overcash, Walker & Co.*, No. 99-
0353-BH-M, 2000 U.S. Dist. LEXIS 15228, at *12 (S.D. Ala. 2000) (addressing accountant
malpractice, stating that "[u]nder Alabama law a plaintiff cannot recover when the plaintiff is
guilty of negligence that contributed to plaintiffs' damages"); *Miller v. Ernst & Young*, 938
S.W.2d 313, 315-16 (Mo. Ct. App. 1997) (rejecting the application of *National Surety* in a
case in which contributory negligence was the governing rule); *Delmar Vineyard v. B. A.
Timmons*, 486 S.W.2d 914, 915 (Tenn. Ct. App. 1972) (rejecting *National Surety* in a
contributory negligence case despite "negligently conducted audits").

accountant fails to discover malfeasance directed *against* the company (such as the embezzlement at issue in *National Surety*).  *See Miller*, 938 S.W.2d at 315-16 (holding that *National Surety* does not apply where the malfeasance "was to make the corporation appear to be more profitable and viable than it in fact was").  It is therefore far from clear that the *National Surety* exception applies *at all* where, as Fannie Mae did here, the audit client engaged in wrongdoing for its own benefit.  *See Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir. 1982) (Posner, J.) ("Fraud on behalf of the corporation is not the same thing as fraud against it."); *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. Ct. App. 1992) (per curiam) ("[A] corporate officer's fraud intended to . . . benefit the corporation . . . is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud.").[3]

Notably, Fannie Mae overlooks the law of the out-of-state jurisdiction most relevant to the law of the District of Columbia—Maryland.  Under the District of Columbia Code, "the common law of the District includes all common law in force in Maryland in 1801," and "[t]hus, a Maryland Court of Appeals decision expounding the common law of that state is 'an especially persuasive authority when the District's common law is silent.'"  *Douglas v. Lyles*, 841 A.2d 1, 5

---

[3]  Indeed, even in New York—which Fannie Mae identifies as the origin of its proposed "professional negligence" exception, Fannie Mae Opp. at 12-13—the rule is far from "unassailable."  The *National Surety* decision is in conflict with another New York intermediate appellate decision, *Craig v. Anyon*, 212 A.D. 55 (App. Div. 1925), *aff'd mem.*, 152 N.E. 431 (1926), as several courts have recognized—including one of Fannie Mae's own authorities, *Shapiro v. Glekel*, 380 F. Supp. 1053, 1056 (S.D.N.Y. 1974) (noting "the apparent conflict between *Craig v. Anyon* and *Lybrand*").  *Craig* applied contributory negligence to bar a client from suing its auditor on the basis of the client's own failure to supervise adequately the employee whose faulty accounting had led to the client's losses. 212 A.D. at 65-66.  Unlike *National Surety*, the *Craig* decision was affirmed by New York's highest court.  152 N.E. 431 (N.Y. 1936); *see also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93cv5298, 1996 WL 728356, at *1 (S.D.N.Y. Dec. 18, 1996) (questioning "the continued vitality of *National Surety*").

n.5 (D.C. 2004) (quoting *Forrest v. Verizon Communications, Inc.*, 805 A.2d 1007, 1012 n.12 (D.C. 2002)).

And the Maryland Court of Appeals has held that contributory negligence is a valid defense in an accounting malpractice case.  *See Wegad v. Howard St. Jewelers, Inc.*, 605 A.2d 123, 128 (Md. 1992) (noting that "[t]he client . . . should not be permitted an absolute and unqualified right to rely on the accountant's advice, and thereby be completely insulated from responsibility for his or her own shortcomings"); *see also Carnegie Int'l Corp. v. Grant Thornton, LLP*, No. 24-C-00-002639, 2005 WL 851064, at *41 (Md. Cir. Ct. Apr. 6, 2005) (under Maryland law, "[c]ontributory negligence is applicable in accounting malpractice cases, and it is an absolute defense if the client's negligence contributed to the client's alleged injuries").[4]  Thus, the federal district court in Maryland, when faced with a similar question of whether to fashion a "professional negligence" exception to contributory negligence doctrine under Maryland law, refused to do so.  *See E.F. Hutton Mortgage Corp. v. Pappas*, 690 F. Supp. 1465, 1475-77 (D. Md. 1988) (holding that even if the accountant "negligently performed its audit . . . plaintiff would not be entitled to recovery in this case because of its own contributory negligence"); *see also Stratton v. Sacks*, 99 B.R. 686, 695 (D. Md. 1989), *aff'd*, 900 F.2d 255 (4th Cir. 1990) (refusing to rely on "cases from jurisdictions other than Maryland" to override the Maryland law of contributory negligence).  Fannie Mae's appeal to other jurisdictions therefore should not, and cannot, save its claim.

---

[4] Fannie Mae attempts to distinguish *Wegad* by pointing to a footnote in that decision.  Fannie Mae Opp. at 17 n.3.  But that footnote does not detract from the persuasive force of the court's statement of substantive law or the holding in that case.

Fannie Mae also contends that because the District "has adopted other rules that mitigate the harsh effects of contributory negligence," it would also adopt a professional negligence exception.  Fannie Mae Opp. at 17.  But the only two "exceptions" Fannie Mae cites—the "last clear chance" doctrine and the doctrine of intervening causation—have nothing to do with professional negligence.  The "last clear chance" rule permits a "helpless plaintiff" to recover despite his contributory negligence, and is a well established, traditional tort doctrine that has existed side by side with contributory negligence law for more than a century and a half.[5]  *See Davies v. Mann*, 10 M. & W. 546, 152 Eng. Rep. 588 (1842).  The intervening-causation rule that Fannie Mae cites, Fannie Mae Opp. at 17, simply reflects the longstanding, black-letter doctrine that the plaintiff may recover where a defendant's negligence is an intervening cause of the plaintiff's condition.  *Durphy v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 698 A.2d 459, 467 (D.C. 1997); *see generally* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts*, § 44, p. 301 (5th ed. 1984).  Far from supporting additional, unrelated exceptions to the traditional contributory negligence doctrine, those exceptions only confirm that contributory negligence in the District of Columbia bars claims that fall outside those narrowly defined doctrines.

Fannie Mae also attempts to find comfort in the commentaries of the *Restatement*.  Yet Fannie Mae principally relies not on the *Restatement of Torts*, but instead on the *Restatement of Agency*.  Fannie Mae Opp. at 3, 15-16, 25-26 (citing comment b of section 5.03 of the

---

5  *Westbrook v. Wash. Gas & Light Co.*, 748 A.2d 437, 441 (D.C. 2000) (quoting *Pack v. Doe*, 347 S.E.2d 22, 25 (Va. 1988)); *see also, e.g.*, *WMATA v. Young*, 731 A.2d 389, 394-95 (D.C. 1999) (stating that last-clear-chance doctrine applies only if "the plaintiff was oblivious to the danger, or unable to extricate [himself] from the position of danger").

*Restatement (Third) of Agency* (2006)).[6]  The comment on which Fannie Mae relies concerns the circumstances under which knowledge of fault can be imputed to an organization.  Contributory negligence, however, is not a doctrine of agency law, but of substantive tort law.  The very same comment in the *Restatement (Third) of Agency* makes this point clear:  "It is a matter of underlying ***substantive*** law, not agency law, whether knowledge, including imputed knowledge, forecloses a claim for relief or [is] a defense against liability."  *Restatement (Third) of Agency* § 5.03 cmt. b (emphasis added).  Rather, substantive law "such as *in pari delicto* may bar a plaintiff from recovering from a defendant whose conduct was also seriously culpable."  *Id.* Under D.C. law, it is not Fannie Mae's "imputed knowledge" that bars its claim against KPMG, but rather its "'unreasonable conduct,' *i.e.*, 'conduct "which falls below the standard to which a plaintiff should conform for his [or her] own protection" and contributes to the plaintiff's injury.'"  *Dist. of Columbia v. Mitchell*, 533 A.2d 629, 639 (D.C. 1987) (quoting *Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980) (in turn quoting *Restatement (Second) of Torts* § 463 (1977))).  The *Restatement of Agency* therefore provides no support for creating an exception to the substantive law of contributory negligence.

Fannie Mae next contends that contributory negligence is not a defense where there is an "*express promise*" to uncover "error or fraud."  Fannie Mae Opp. at 18 (emphasis in original). But as KPMG pointed out in its opening memorandum—and as Fannie Mae does not dispute— the duty of care in professional negligence cases under D.C. law is generally the same whether

---

[6] Fannie Mae also half-heartedly relies on the *Restatement (Third) of Torts*.  Fannie Mae Opp. at 15 n.2, 16.  But the *Restatement (Third) of Torts* presumes a regime of "***comparative responsibility***," which "***replaces*** the rule of contributory negligence."  *Restatement (Third) of Torts* § 7, cmt. a, b (2000) (emphasis added).  It thus says nothing about the District's contributory negligence regime.

the action sounds in contract or tort. KPMG Mem. at 11-12. Fannie Mae points to nothing in KPMG's engagement letters with Fannie Mae that purports to raise that standard of care, much less override the defense of contributory negligence. Moreover, KPMG is aware of no D.C. case that recognizes an "express promise" exception to the contributory negligence doctrine, and Fannie Mae cites none. The single decision that Fannie Mae cites on this point, *Cumis Insurance Society v. Tooke*, 739 N.Y.S.2d 489, 492 (App. Div. 2002), does not support such an exception. The opinion does not even mention contributory negligence—no doubt because New York has been a comparative negligence jurisdiction since 1975. *See* N.Y. C.P.L.R. § 1411. A decision that never mentions contributory negligence, from a jurisdiction that does not recognize contributory negligence, cannot create an exception to contributory negligence in the District of Columbia.[7]

Fannie Mae also trots out a parade of horribles, contending that a "professional negligence" exception to the contributory negligence doctrine "is essential to prevent the tort of auditing malpractice from becoming a dead letter." Fannie Mae Opp. at 18. Fannie Mae even asserts that were the doctrine of contributory negligence applied here, "KPMG would have invented the perfect business model," giving it "absolute immunity" "no matter how clear its errors, and no matter how substantial the wreckage left in its wake." Fannie Mae Opp. at 2-3.

---

[7] Nor is the "express promise" in this case quite what Fannie Mae portrays. Each of the three engagement letters cited in the complaint (Compl. ¶ 35) cautions that the audit will not provide "absolute assurance" that the financial statements are free from error: "Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected." The engagement letters further warned that KPMG was "not being engaged to report on Fannie Mae's internal controls" and, on KPMG's promises in the context of quarterly reviews, stated: "Our review cannot be relied upon to disclose errors, fraud or illegal acts that may exist."

Fannie Mae is incorrect.  In a world in which a blue-ribbon commission lauded by Securities and Exchange Commission Chairman Henry Paulson is proposing reforms to solve the deepening accountant-liability crisis, it strains credulity to maintain that accountants have the "perfect business model."  *See* Comm. on Capital Markets Regulation, *Interim Report of the Committee on Capital Markets Regulation* 88 (Nov. 30, 2006) (noting that "audit firms are exposed to financial ruin by liability lawsuits").  This very case is a prime example:  KPMG is a defendant in the securities fraud litigation in which the plaintiffs apparently seek billions of dollars in damages.  It is obviously not "absolutely immune" from any misconduct it is alleged to have committed.

Moreover, in this case Fannie Mae's own complaint reveals that both its "accounting" and its "accounting policies" were wrong, and it complains that KPMG "did nothing more than rubber-stamp Fannie Mae's internal accounting decisions."  Compl. ¶¶ 2, 4, 14.  The application of the contributory negligence doctrine finds further support in the Rudman Report (Compl. ¶ 67), and in the OFHEO investigation (also cited in the complaint, Compl. ¶ 66), both of which detailed numerous instances in which Fannie Mae withheld information from KPMG.  *See* KPMG Mem. at 4-5.  Dismissing a purported "malpractice" action in these circumstances allocates fault in the manner provided by the D.C. courts and—as these MDL proceedings demonstrate—in no way creates the "perfect business model" for accountants.

In the final analysis, Fannie Mae's true complaint is that the law of contributory negligence purportedly has "harsh effects" when compared to a comparative negligence regime. Fannie Mae Opp. at 17.  But that complaint does not change the fact that contributory negligence—as applied by the D.C. courts for decades—is "the reigning expression of state law." *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1087 (7th Cir. 1990) (Easterbrook J.).  It

is not the role of federal courts to make "bold departures in areas of the law that [they have] no responsibility for developing." *Id.* (internal quotation marks omitted); *see also Baena v. KPMG LLP*, 453 F.3d 1, 8 (1st Cir. 2006) ("It is not our job to make new law for Massachusetts by adopting a peculiarly narrow view of the adverse interest exception in *in pari delicto* cases; such alterations, if deemed wise, are for the state courts."). Contributory negligence is the law in the District of Columbia, and this Court should apply that law.

**B.    Fannie Mae's Claim Is Barred By The Doctrine Of *In Pari Delicto*.**

With respect to *in pari delicto*, Fannie Mae contends that the *in pari delicto* doctrine applies only in cases involving "[f]raud or criminal misconduct." Fannie Mae Opp. at 22. That hardly helps Fannie Mae here, for Fannie Mae most certainly ***did*** defraud KPMG. KPMG Mem. at 15-18 (detailing instances in which Fannie Mae concealed material information from KPMG).

But more important, Fannie Mae's statement of the law is incorrect. The *in pari delicto* doctrine applies "where the plaintiff has participated in some of the same sort of ***wrongdoing*** as the defendant." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (internal quotation marks omitted; emphasis added). Fannie Mae cites no case in support of the notion that "wrongdoing" for purposes of *in pari delicto* is restricted to fraud or criminal behavior, and courts have repeatedly held otherwise.[8]

---

[8] *See D.C. Transit Sys., Inc. v. Garman*, 301 F.2d 568, 571 (D.C. Cir. 1962) (finding that because drivers in an automobile accident were "joint tort-feasors and [] the active negligence of each was a proximate cause of the collision . . . [t]hey were in pari delicto"); *Standard Brands, Inc. v. Bateman*, 184 F.2d 1002, 1008 (8th Cir. 1950) (noting that where the defendant's maintenance man and an independent contractor hired to service a building were both negligent, the contractor and the defendant were *in pari delicto*); *Consol. R. Corp. v. Allied Corp.*, 692 F. Supp. 924, 930 (D. Ind. 1988) ("Where the negligent acts of parties concur in producing injury, they are . . . liable not only where there is a breach of a common

[Footnote continued on next page]

**II.      There Is No Reason To Postpone Dismissal Of The Complaint.**

**A.      Fannie Mae's Contributory Fault Is Apparent On The Face Of Its Complaint.**

Fannie Mae also argues that contributory negligence and *in pari delicto* cannot be considered on a motion to dismiss.  Fannie Mae Opp. at 19-22, 31.  But Fannie Mae's complaint in this action, and the public record that both underlies and is referenced in the complaint, warrant dismissal now.

There is no prohibition against deciding contributory negligence and *in pari delicto* defenses on a motion to dismiss.  As KPMG's opening memorandum explained, numerous decisions have dismissed malpractice and related claims on the pleadings for these very reasons. *See* KPMG Mem. at 12-13.  The essential allegations and facts on which KPMG premises its motion are presented in its moving papers.  *See* KPMG Mem. at 8-9, 13-14.  It makes little sense for Fannie Mae to complain that KPMG "did nothing more than rubber-stamp Fannie Mae's internal accounting decisions" that were "not even on the page of the outer bounds of compliance with GAAP," and were the result of numerous "internal control deficiencies" at Fannie Mae, Compl. ¶¶ 1, 14, 73, then insist that Fannie Mae acted "reasonably" in making those very decisions, Compl. ¶ 43.  Again, the entire premise of this case is that KPMG failed to detect errors in the accounting judgments made by Fannie Mae.[9]  Fannie Mae does not dispute this. Fannie Mae Opp. at 11 (noting that "management in the first instance formulates and implements

---

[Footnote continued from previous page]

duty owing by them, but also where their acts of negligence are separate and independent.  In either situation they would be joint tortfeasors, in pari delicto."), *aff'd*, 882 F.2d 254 (7th Cir. 1989).

[9]  Compl. ¶¶ 2, 4, 25, 28, 34, 50, 100, 103-04.

accounting policies"). Moreover, Fannie Mae points to no finding in the Rudman Report or in the OFHEO Reports that it disputes.

In support of its view that the complaint does not concede contributory fault by Fannie Mae, Fannie Mae relies on a single, conclusory allegation in the complaint. That allegation states that "'Fannie Mae and its Audit Committee acted reasonably.'" Fannie Mae Opp. at 20 (quoting Compl. ¶ 43). But it is settled that conclusory allegations that are contrary to specific averments in the complaint and the materials underlying it are insufficient to avoid dismissal. *Wright v. Ore. Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004) (stating the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" (internal quotation marks and citation omitted)); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001) (declining to credit "bare conclusory allegations . . . when, as here, they are not only unsupported by any factual allegations but are in fact contradicted by the factual allegations plaintiffs do make"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir. 2001) (noting that a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice" or allegations that are "merely conclusory"). Because this conclusory allegation does not rebut the specific allegations that concede Fannie Mae's own wrongdoing, it cannot save the complaint from dismissal.

Indeed, Fannie Mae's specific allegations about "internal control deficiencies" confirm that dismissal now is appropriate. In Fannie Mae's words, these deficiencies concerned:

> Financial systems and other information technology systems; entity-level controls relating to risk oversight, staffing and expertise of the internal audit and accounting departments, and documentation of policies and procedures; design and application of accounting policies; the valuation of assets and liabilities; and the financial reporting process.

Compl. ¶ 73.  These are not KPMG's internal control deficiencies—they are the deficiencies that Fannie Mae found in its own business, and that caused the alleged errors and restatement.  That is the essence of contributory negligence.  *See, e.g.*, *In re Greater Se. Cmty. Hosp.*, 353 B.R. 324, 369 (Bankr. D.D.C. 2006) (dismissing a professional malpractice claim under District of Columbia law on a 12(b)(6) motion where "the very harm" that the company allegedly suffered as a result of the client's wrongdoing "presupposed" wrongdoing by the company).

Fannie Mae attempts to avoid the consequences of the admissions in its complaint and elsewhere by seeking to distance "Fannie Mae" from its "Audit Committee."  Indeed, this theme runs throughout the complaint.  But the "Audit Committee" does not bring this action against KPMG; Fannie Mae does.  Compl. ¶ 1.  The "Audit Committee" does not allege any harm; only Fannie Mae does.  Compl. ¶ 74.  KPMG's contracts were not with the "Audit Committee"; they were with Fannie Mae.  Compl. ¶¶ 113, 121.  And it is Fannie Mae's negligence that bars its claim against KPMG.  KPMG Mem. at 8-9, 13-14.  Fannie Mae cannot escape its own misconduct by inventing an artificial distinction between "Fannie Mae" and its "Audit Committee."

Fannie Mae also contends that contributory negligence cannot be decided on the pleadings because it has alleged so many errors in its accounting:  "over *thirty* different categories of accounting policies and practices."  Fannie Mae Opp. at 20 (emphasis in original).  Again, Fannie Mae misstates the law of contributory negligence.  Under the law of the District, any negligence by a plaintiff completely bars the plaintiff's claim.  *See* KPMG Mem. at 10-11.  Allocation of fault is a creature of comparative negligence, and it is inapplicable here.

**B.    Fannie Mae Is Estopped From Denying The Rudman Report And Its Admissions In Its SEC Filings.**

As explained above, the allegations of the complaint itself are sufficient, without more, to support dismissal of the complaint, and this Court need go no further in its analysis.  But there is much, much more material proper to consider on a Rule 12(b)(6) motion that justifies immediate dismissal.  Even on a motion to dismiss, this Court need not ignore the obvious:  that Fannie Mae has admitted on numerous occasions in a wide range of sources that its management was, at an absolute minimum, negligent in formulating the very accounting policies that Fannie Mae's complaint alleges were so grossly mistaken.  Fannie Mae cannot avoid these facts.

It is worth pausing for a moment over the position that Fannie Mae is now taking before this Court.  Fannie Mae's own Board of Directors commissioned a comprehensive, independent investigation by former Senator Warren Rudman that culminated in a detailed, 600-page report setting forth factual findings and recommendations.  The key findings in the report are that Fannie Mae's accounting practices "were not consistent with GAAP"; that "in many instances, management was aware of departures from GAAP"; and that Fannie Mae's management was "primarily responsible for adopting or implementing accounting policies that departed from GAAP."  *See* KPMG Mem. at 2, 6.

When the Rudman Report was released, Fannie Mae's Board of Directors issued a statement—for review by the public, regulators, investors, and this Court—that Fannie Mae fully "accept[ed] and embrac[ed] the report."  *See* KPMG Mem. at 7.  And Fannie Mae's Board of Directors specifically stated that Fannie Mae adopted the report's factual "findings"—including the "findings" that Fannie Mae had knowingly adopted non-GAAP accounting "to show stable earnings growth, achieve forecasted earnings, and avoid income statement volatility."  KPMG Mem. at 6-7.  Moreover, Fannie Mae has filed financial statements with the SEC that also

15

expressly acknowledge its accounting was *designed* to show stable earnings growth and achieve forecasted earnings.  KPMG Mem. at 11-12.

Fannie Mae made these admissions to investors and regulators purportedly to demonstrate its accountability, contrition, and acceptance of responsibility.  But now that those statements are no longer convenient, Fannie Mae contends that they should have no consequence.  This type of strategic behavior is precisely what the equitable doctrine of judicial estoppel is designed to prevent.  Fannie Mae should not be permitted to manipulate the proceedings in this Court by disavowing the admissions it has made forcefully, repeatedly, and unequivocally.

### 1.    Judicial Estoppel Applies To Statements Made Outside Of A Court Proceeding.

KPMG's opening memorandum showed that Fannie Mae is estopped from the admissions it has made in the Rudman Report and in its SEC filings, which show that Fannie Mae itself was principally responsible for the restatement.  KPMG Mem. at 18-20.  In response, Fannie Mae does not dispute that it has publicly adopted the findings of the Rudman Report and previously admitted that its management was at fault for the restatement.  Indeed, Fannie Mae's lengthy opposition memorandum identifies *no* finding of the Rudman Report and *no* admission in its SEC filings with which it disagrees.

Instead, Fannie Mae contends that it may deny the damaging admissions in its SEC filings and in the Rudman Report (for now) because judicial estoppel has been applied only in cases involving statements made in court.  Fannie Mae Opp. at 35.  But judicial estoppel, as the Supreme Court has made clear, "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment" and precludes parties from "deriv[ing] an unfair

advantage . . . if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750, 751 (2001). That is exactly what Fannie Mae proposes to do here.

Fannie Mae is incorrect that judicial estoppel is limited to statements made before "adjudicative bod[ies]." Fannie Mae Opp. at 34. For example, judicial estoppel applies to statements made to administrative agencies, even outside the context of adjudications. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (Posner, J.) (noting that "[t]hough called *judicial* estoppel, the doctrine" applies to statements made in administrative proceedings (emphasis in original)); *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997) (judicial estoppel thus applies to statements made in "administrative *or* quasi-judicial proceedings" (emphasis added)); *Musler v. Georgeff*, 233 F. Supp. 2d 727, 731 (D. Md. 2002) ("[J]udicial estoppel is appropriate where the party makes a statement to a government agency inconsistent with an assertion in litigation with a private party."). In *Lewis v. Atlas Corp.*, 158 F.2d 599 (3d Cir. 1946), for instance, the court estopped a litigant from denying the existence of a contractual amendment, on the ground that the litigant had previously admitted the amendment's existence in an SEC filing and in a statement made in an SEC proceeding. *Id.* at 602. Plaintiffs "can hardly be in a position of asserting the existence of an agreement before a ***public regulatory body*** and denying it before a court." *Id.* (emphasis added). The statements KPMG cites in its moving papers were made not only in press releases, but also in congressional testimony and in formal public filings with the SEC. KPMG Mem. at 7-8. Litigants are simply not free to play "fast and loose" with courts by saying one thing to Congress, and then another to a court, or by saying one thing to government investigators, and another to a court. Again, that is regrettably what Fannie Mae seeks to do here.

17

Indeed, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, Fannie Mae's SEC filings were *certified as true* by Fannie Mae's senior executives under penalty of a fine of up to $5 million and twenty years in prison.  18 U.S.C. § 1350; *see Am. Nat'l Bank v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983) ("Judicial estoppel is applied to the calculated assertion of divergent sworn positions.").

Fannie Mae's SEC filings make clear that its internal controls and internal corporate governance structure were insufficient.  In its Form 10-K filing with the SEC, after its "management assessed the effectiveness of our internal control over financial reporting," Fannie Mae concluded that its own internal auditing group "*did not* maintain a sufficient complement of personnel with an appropriate level of accounting and auditing knowledge, experience, and training."  Fed. Nat'l Mortgage Ass'n, Annual Report (Form 10-K), at 199-200 (Dec. 6, 2006) (emphasis added).  Its department responsible for internal auditing, Fannie Mae conceded, "*did not* functionally report to the Audit Committee of the Board of Directors . . . which created inadequate independence and objectivity."  *Id.* (emphasis added).  And Fannie Mae acknowledged that its "corporate governance structures *lacked sufficient checks and balances*, which adversely affected the flow of information to, and the effectiveness of, the Board of Directors."  *Id.* (emphasis added).  In short, its admissions in public statements, in the Rudman Report, and in its certified filings with the SEC, make Fannie Mae's negligence clear.

> **2.     Fannie Mae Is Estopped From Denying The Interim And Final OFHEO Reports.**

Fannie Mae is estopped from denying the statements in the interim and final OFHEO reports, because Fannie Mae previously asked this Court to take judicial notice of the facts in those reports.  *See* KPMG Mem. at 21.  Fannie Mae does not dispute that the judicial estoppel doctrine applies to its judicial notice motion.  In fact, Fannie Mae flatly concedes that its motion

to dismiss "relied extensively on the OFHEO Reports in their Complaint." Fannie Mae Opp. at 39. But Fannie Mae contends that it did so only because the interim OFHEO report was attached to the securities plaintiffs' complaint. Fannie Mae Opp. at 39. That is incorrect.

There would have been no reason for Fannie Mae's "judicial notice" motion at all if Fannie Mae were simply citing it because it was an exhibit to the plaintiffs' complaint. Rather, Fannie Mae sought judicial notice to rely on the facts in the OFHEO report. Fannie Mae is therefore estopped from denying those facts now.

Fannie Mae is also estopped from denying the facts in the final OFHEO report. As a matter of law, there is no material distinction between the final and interim OFEHO reports for the purposes of the judicial notice doctrine: if one is subject to judicial notice, the other is as well. Judicial estoppel prevents parties from taking inconsistent legal positions, and Fannie Mae cannot deny the accuracy of the final OFHEO report consistent with the logic of its judicial notice motion. *See* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4477 (2d ed. 2002) (judicial estoppel applies to assertions of "law as well as fact").

Finally, Fannie Mae contends that KPMG is somehow also estopped from denying the accuracy of the OFHEO reports. Fannie Mae Opp. at 40. But that could be true only if KPMG had previously taken the position that this Court may consider the facts in those reports on a motion to dismiss. KPMG has never done so. Fannie Mae has.

## CONCLUSION

For the foregoing reasons, as well as those stated in KPMG's opening memorandum, the complaint should be dismissed.

Respectfully submitted this 2nd day of May 2007.

    /s/ Andrew S. Tulumello
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar No. 468351)
Claudia M. Osorio (D.C. Bar No. 477594)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Defendant KPMG LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused copies of the foregoing to be transmitted on May 2, 2007, to

the following counsel registered to receive electronic service:

Jerome L. Epstein
Ian Heath Gershengorn
Jenner & Block LLP
601 13th Street, N.W.
Washington, D.C.  20005
*Counsel for Fannie Mae*

        /s/ Henry C. Whitaker

        Henry C. Whitaker