IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04CV01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br><br>*Defendants*. | No. 1:06CV00139 (RJL) |
| FANNIE MAE,<br><br>*Plaintiff*,<br><br>v.<br><br>KPMG LLP,<br><br>*Defendant*. | No. 1:06CV02111 (RJL) |

**KPMG LLP'S STATUS REPORT ON DISCOVERY-RELATED ISSUES**

KPMG LLP submits this report to advise the Court of a substantial discovery-related problem created by Fannie Mae that makes it impossible for several of the upcoming depositions in this matter to be completed without giving KPMG the right to recall certain witnesses at a later date. Fannie Mae has, without fair and adequate notice to any of the parties, apparently withheld until the last minute the production of significant restatement, governance and damage related documents critical to the depositions of Fannie Mae, PricewaterhouseCoopers and Deloitte & Touche witnesses. Specifically, in the six weeks ending July 15, 2008, Fannie Mae

1

produced over **20 million pages of documents**, of which 11,052,180 were not made available to the parties on the XLS Securities Litigation database until **after** this Court's ordered June 15th production deadline. From KPMG's preliminary scan of the recent productions to XLS, it is readily apparent that Fannie Mae should have produced a significant number of these previously undisclosed documents in response to KPMG's *first* discovery requests, which were made more than a year ago.

Based on the current schedule, it is inevitable, given Fannie Mae's conduct, that KPMG will be unable to identify from within the voluminous and untimely production, the documents it needs to complete the depositions of several Fannie Mae and other key witnesses until after those witnesses have already testified. KPMG therefore respectfully asks the Court—not to postpone the scheduled depositions—but instead to adjust the deposition protocol by giving KPMG the right to recall Fannie Mae and other witnesses for additional testimony, as necessary, to examine these witnesses on significant documents from Fannie Mae's recent 20 million page productions relating to each such witness. This accommodation would protect KPMG's interests from the prejudice caused by Fannie Mae's conduct without necessitating a wholesale delay in the deposition schedule.

## HISTORY OF JUNE 15TH DOCUMENT PRODUCTION DEADLINE

KPMG requested documents related to Fannie Mae's accounting, damages and restatement allegations on more than one occasion—first in its initial document request on May 1, 2007, and again in its December 2007 and January 2008 requests. Under the Case Management Order ("CMO") then in effect, all documents were to be produced no later than March 2008. In February, Fannie Mae disclosed it had not produced all requested documents pertaining to witnesses whose depositions had been noticed and that it would not do so until after

2

both the production deadline and the dates for the scheduled depositions had passed. The Court suspended deposition discovery and the parties then agreed to negotiate the current CMO, which was intended to establish a schedule for completing document production with sufficient time for the parties to review the newly produced documents before depositions resumed.

Fannie Mae, through its counsel at Jenner & Block, created the current predicament by negotiating the new CMO and the current Deposition Protocol without disclosing the true magnitude of the documents they expected to produce. In May, when KPMG agreed to the revised schedule for completion of document production and for the taking of depositions, it did so based on the premise that Fannie Mae, KPMG, and the other parties had already produced the bulk of their responsive documents and only required a short period of time to complete their productions. Accordingly, the parties provided this Court with a stipulated, agreed-upon deadline of June 15, 2008, for the final production of documents.

In order to allow sufficient time for review of pertinent documents before commencing depositions, two deposition start dates were also agreed upon. Specifically, depositions of witnesses "not involved in a substantial number of documents that were produced by the parties after May 15, 2008" could begin on June 15, 2008, while witnesses who *were* involved in a substantial number of documents produced between May 15 and June 15, could not be deposed before July 15. Thus, the parties allowed themselves thirty days to review the expected collection of new documents before commencing examination of these witnesses. *See* CMO No. 5 (May 7, 2008) at ¶¶ 1 & 2.

When it agreed to this schedule, KPMG had every reason to believe that Fannie Mae had, in good faith, already complied with the earlier document requests and that the documents Fannie Mae had yet to produce could be reviewed in time to prepare for depositions. KPMG's

3

belief in the transparency of Fannie Mae was misplaced. As a result, KPMG lacks sufficient time between Fannie Mae's untimely document production and the start of deposition discovery to prepare for the depositions of numerous important witnesses.

**PREJUDICE TO KPMG CAUSED BY FANNIE MAE'S CONDUCT**

The volume of documents that Fannie Mae produced even in the weeks *after* the June 15th deadline is itself truly massive. As recently as this Tuesday**, July 15**, 688,945 new pages produced by Fannie Mae were uploaded to the shared litigation database. In fact, a total of **11,052,180 pages** have been made available by Fannie Mae since the deadline passed. Fannie Mae's June and July productions constitute over *70%* of the total number of pages it has produced to all parties since KPMG gained access to the database in April 2007.[1] These June and July productions also constitute over *40%* of the total number of pages that Fannie Mae produced to the XLS database *since the inception of the litigation*, with over 20% of those pages being produced *after* the document production deadline of June 15, 2008. As a result of Fannie Mae's decision to produce millions of pages of key documents long after the document production deadline, and on the eve of depositions, it is now—as a practical matter—impossible for KPMG to complete its review of the documents before September and thereby be assured that it has all of the information needed to depose any Fannie Mae witness who was involved in Fannie Mae's accounting policies in the first instance or in adjusting those policies in connection with Fannie Mae's restatement.

The key witnesses include, by way of example, Deborah House, a former Fannie Mae deputy general counsel who was very heavily involved in investigating claims made by Roger

---

[1] Please see Exhibit A for a visual chart showing the progression of Fannie Mae's production from April 2007 through the present.

Barnes, the whistleblower who alleged that Fannie Mae had circumvented its own controls by manually entering inappropriate journal entries. The Deborah House deposition provides an apt illustration of the prejudice caused by Fannie Mae's conduct.

Ms. House was scheduled several weeks ago for a July 14 deposition. At 1:58 a.m. on Saturday, July 12, counsel for Fannie Mae produced by email documents relating to Deborah House that had previously been on Fannie Mae's privilege log. On Sunday, July 13 at 12:02 p.m., counsel for KPMG received an e-mail from the database vendor that Fannie Mae had elected to produce yet another 16,000 pages of documents – a number of which appear to relate to Deborah House based on search term "hits" on the names House and Barnes, the whistleblower. Thus, not only did Fannie Mae miss the Court-ordered production deadline by a full month, it also managed to bury documents pertinent to the House depositions in 16,000 pages produced less than 24 hours before her deposition commenced. This prejudice with regard to Ms. House's documents was compounded further when it was discovered that yesterday (July 15, 2008) Fannie Mae's document production contained more documents that included Deborah House references.

Documents essential to the questioning of the many Fannie Mae personnel who developed, implemented, applied or otherwise were responsible for Fannie Mae's accounting policies—both before and in connection with the restatement—are needles interspersed in a stack of 20 million stalks of hay. For example, the recent production contains new correspondence and reports from 2005 and 2006, many of which bear upon our *first set* of requests, including those seeking "all documents concerning Fannie Mae's decision to restate" its financial statements for errors associated with various accounting issues. In addition, unabridged presentations on Fannie Mae's restatement analytics serve to "quantify the financial effect of

5

changes in the accounting", as outlined in Request 99.  Lastly, Fannie produced documents responsive to KPMG's *initial* Request No. 40 that offer detailed timelines comparing Fannie Mae's and Freddie Mac's restatements, and that include discussion of OFHEO's influence on the restatement decision.  These documents and many others, created years ago, are the very type of documents that should have been produced in response to KPMG's initial requests.

      The review of **20 million new pages of documents** in such a short period of time would be impossible under even ideal conditions.  But KPMG's task is made much more onerous by a recurring problem with the manner in which Fannie Mae's documents have been made available for review.  A significant percentage of Fannie Mae's documents lack the "metadata" needed to conduct proper searches of the database for materials pertinent to particular witnesses.  Metadata identifies essential features of a document such as the date it was created or modified, its custodian (usually the person who had possession of the document), and either the author or—for electronic documents—the person who sent the document.  Where, as here, the request for production seeks documents in their "native" (*i.e.*, original) format, production of a non-native version without the metadata does not satisfy the Federal Rules of Civil Procedure.  *See, e.g.*, *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L*, 2006 U.S. Dist. LEXIS 10838 (N.D. Ill. Mar. 8, 2006) at *8-9 (holding that "unlike the original electronic media," the format of the documents produced failed to comply with Rule 34(a), Fed. R. Civ. P., because they did not "contain information such as the creation and modification dates of a document, e-mail attachments and recipients, and metadata").

      Based on recent statistics provided by Xerox Litigation Services, of the nearly 3 million documents Fannie Mae has produced in response to each of KPMG's requests, over 45% do not contain metadata identifying the custodian, and 44% lack metadata identifying the author or

6

"sender" of the document. Furthermore, in analyzing the metadata for the most recent Fannie Mae productions (provided to the parties since June of this year), *more than 56%* of the documents do not have author or sender information and *over 75%* are missing a document date. There are even documents that Fannie Mae produced to the XLS database without text files, which renders them unable to be searched by any of the parties. The absence of this vital information prevents KPMG from conducting accurate, targeted searches for documents needed when deposing a large number of the witnesses. Regardless of where the responsibility lies for this problem (Fannie Mae has placed the blame on the database vendor, which was chosen without KPMG's input), the combination of the size and quality of Fannie Mae's production requires reasonable accommodations to KPMG in the taking of upcoming depositions.

## MEET AND CONFER EFFORTS

During a meet and confer on this issue, Fannie Mae's counsel stated that documents related to the restatement were "only" needed for the depositions of those involved in the restatement. If so, that alone would affect the deposition of dozens of witnesses. But Fannie Mae is wrong. The June and July productions are essential to the testimony of those witnesses who were involved in Fannie Mae's accounting policies and practices in earlier years. These restatement documents, which include consideration of whether and why an item needed to be restated, provide a vital tool for questioning those employees about conduct in prior years that led to the decision to restate and about whether such a decision was warranted.

## CONCLUSION

Given the obvious prejudice to KPMG from this conduct, the Court is well within its legal and equitable discretionary powers to grant KPMG the relief sought: *i.e.*, the option to recall Fannie Mae and other witnesses if KPMG determines after a witness is deposed that one or

more documents produced in Fannie Mae's June and July 2008 productions was necessary to the testimony of that witness.[2] KPMG is not looking to cancel previously scheduled depositions or to bring the discovery process to a halt. But we simply must have the ability to represent our clients, and we cannot do that by being forced to review 20 million pages of documents in a patently unreasonable period of time. KPMG pledges to the Court that it will not abuse the right to recall Fannie Mae witnesses, and Fannie Mae could always have recourse to this Court should it appear that KPMG was not acting in good faith. Finally, and separate from the issue of recalling witnesses, the Court is respectfully requested to compel Fannie Mae to work with the vendor to ensure that the missing metadata from its productions is provided on the database no later than August 15, 2008.

Respectfully submitted this **16th day of July 2008**.

 /s/  F. Joseph Warin
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar No. 468351)
David Debold (D.C. Bar No. 484791)
  (*application for admission to D.D.C. pending*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

---

[2]   KPMG is not seeking sanctions at this time. It reserves the right, however, to seek appropriate additional relief in the future including, but not limited to, preclusion of any damages award to Fannie Mae related to the cost of its restatement.

**EXHIBIT A**

**FNMA Document Productions to XLS from 04/24/2007 - 07/15/2008**



**EXHIBIT A**

## FNMA Document Productions from 04/24/2007 - 07/15/2008



**CERTIFICATE OF SERVICE**

I hereby certify that I caused copies of the foregoing to be transmitted to the following counsel registered to receive electronic service:

| | |
|---|---|
| James R. Cummins<br>Melanie S. Corwin<br>Jean Marie Geoppinger<br>Waite, Schneider, Bayless & Chesley Co., L.P.A.<br>1513 Fourth & Vine Tower<br>One West Fourth Street<br>Cincinnati, OH 45202<br>*Counsel for Lead Plaintiffs* | Daniel S. Sommers<br>Cohen, Milstein, Hausfeld & Toll P.L.L.C<br>West Tower, Suite 500<br>1100 New York Ave., N.W.<br>Washington, D.C. 20005<br>*Counsel for Plaintiffs Vincent Vinci; State Teachers Retirement System of Ohio; Anne E. Flynn; Robert L. Garber* |
| Frank J. Johnson<br>Johnson Bottini, LLP<br>655 W. Broadway, Suite 1400<br>San Diego, CA 92101<br>*Counsel for Plaintiff Sassan Shahrokhinia* | Robert W. Liles<br>Liles Parker, PLLC<br>4400 MacArthur Blvd., N.W.<br>Suite 203<br>Washington, DC 20007<br>*Counsel for Plaintiff Sassan Shahrokhinia* |
| Jeffrey W. Kilduff<br>Michael J. Walsh, Jr.<br>O'Melveny & Myers LLP<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>*Counsel for Defendants Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl* | Steven M. Salky<br>Eric R. Delinsky<br>Ellen D. Marcus<br>Caroline E. Reid<br>Zuckerman Spaeder LLP<br>1800 M Street, N.W., Suite 1000<br>Washington, D.C. 20036-2638<br>*Counsel for Defendant Timothy J. Howard* |
| Kevin M. Downey<br>Alex G. Romain<br>Joseph M. Terry, Jr.<br>John E. Clabby<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005-5091<br>*Counsel for Defendant Franklin D. Raines* | David S. Krakoff<br>Christopher F. Regan<br>Adam B. Miller<br>Heather H. Martin<br>Mayer Brown LLP<br>1909 K Street, N.W.<br>Washington, D.C. 20006-1101<br>*Counsel for Defendant Leanne G. Spencer* |
| William H. Jeffress<br>Julia E. Guttman<br>Nicholas A. Brady<br>Baker Botts LLP<br>The Warner | Rhonda D. Orin<br>Anderson Kill & Olick, P.C.<br>2100 M Street, N.W. Suite 650<br>Washington, D.C. 20037<br>*Counsel for Defendant Leslie Rahl* |

1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

John H. Doyle, III
Reed Smith LLP
599 Lexington Ave.
New York, NY 10022-7650
*Counsel for Defendant Leslie Rahl*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

Shannon Ratliff
Ratliff Law Firm, PLLC
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy and Frederic V. Malek*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
1200 19th Street, N.W.
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley, Donald B. Marron, and Ann Korologos*

David I. Ackerman
James Hamilton
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

Seth Aronson
O'Melveny & Myers LLP
400 South Hope Street, 15th Floor
Los Angeles, Ca. 90071
*Counsel for Defendant Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl*

Ian H. Gershengorn
Jerome L. Epstein
Jenner & Block
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412

*Counsel for Fannie Mae*

William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas P. Gerrity*

J. C. O'Malley
Michael J. Avenatti
Eagan O'Malley & Avenatti, LLP
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
*Counsel for Fannie Mae*

　　　　　　　　　　　　/s/ Claudia M. Osorio　　
　　　　　　　　　　　　Claudia M. Osorio